## P. C. TOMSON & CO. v. I. HEIDENHEIMER, JR., ET AL.

### Decided April 21, 1897.

**1. Accord—New Contract—Failure to Perform.**

Where an existing liability was agreed to be settled by contract embracing other matters, with which the party liable failed to comply, he thereupon became liable upon the original obligation.

**2. Charge—Omission.**

Failure to instruct the jury as to what constituted acceptance, in an issue as to sale of goods, was not error in absence of a request for further instructions.

**3. Witness—Sued as Partner—Evidence.**

A witness who is sued as a member of a partnership, the existence of which has not been put in issue by the answer, may testify to facts showing that he has no interest in the result of the suit, as bearing on the weight of his evidence.

**4. Same—Pleading—Harmless Error.**

Permitting the filing of a supplemental answer during the progress of the trial, to show that such witness had no interest in the result, though irregular, was harmless, and not reversible error.

**5. Witness—Reputation for Truth—When in Issue.**

The mere fact that a witness' evidence is contradicted by opposing testimony will not justify the introduction of evidence in support of his reputation for truth.

**6. Sale—Rescission—Pleading.**

Where, in suit on an account for goods sold and delivered, defendants did not ask for rescission, but alleged that the sale of part of the goods was never completed and did not go into effect; *Held*, that a verdict by which plaintiffs recovered only a part of their alleged debt was supported by the pleadings.

**7. Assignment of Error.**

Under an assignment of error which complains that a verdict was not supported by the pleadings, the court can not consider a question as to the failure of the jury to find in response to the charge.

ERROR to County Court of Travis. Tried below before Hon. D. A. McFALL.

*Walton & Hill,* for plaintiffs in error.—The court erred in its charge to the jury in submitting the charge for freight claimed by defendants in counter-claim against plaintiffs, because there was no evidence whatever to justify such a charge; and because all the evidence showed that a new contract was made after the goods, to wit, "Old Country Wood Ash Lye," had arrived and was stored in defendants' store, and because a jury could not, under the law, go anterior to the contract, or assess or consider any damages from disputes prior to the admitted time of making the contract, August 8, 1895. Railway v. Rider, 62 Texas, 267.

Where a vendee has received goods, under a contract of sale, into his possession, and has exercised rights of ownership over same by selling a part thereof, and offering the goods for sale, the acts of such vendee constitute in law an acceptance of said goods, and that title to said goods has passed into such vendee. Benj. on Sales, secs. 144, 145, 703, 704.

Where manufactured soap in boxes is sold by the box, and is near at hand at time of sale, and the vendee has the opportunity of inspection, if desired, and to ascertain the quantity and weights of same, and receives, accepts, and pays for same, and has himself been reselling parts of same for a period of four months, in the absence of an express warranty guaranteeing said goods against shrinkage and short weight, the law will not imply an express warranty as to weights when a shortage is discovered after a lapse of four months from delivery. Reed v. Randall, 29 N. Y., 358; same case, 86 Am. Dec., 305, and notes.

The court erred in admitting, over plaintiffs' objections, the testimony of L. Sinsheimer in regard to his having no interest in the case, and the contents of contract between defendants as to indemnifying said Sinsheimer against any judgment, because same was irrelevant and immaterial, and served to confuse the true issues of the case.

The court erred in sustaining the objections of defendants to the testimony of M. E. Fowler, when plaintiff was seeking to prove the reputation for truth and veracity of plaintiff's witness, G. R. Wilson; because the testimony of said G. R. Wilson had been positively contradicted by defendant I. Heidenheimer, Jr., as to the terms of the contract, and same amounting in effect to an impeachment, and because G. R. Wilson resided in another county, and plaintiffs were entitled to support his testimony. Railway v. Rainey, 23 S. W. Rep., 341; Burrell v. State, 18 Texas, 730; 1 Whart. Ev., 569.

The court erred in permitting, over plaintiffs' objection, the defendants to file, in the midst of the trial and after plaintiffs had rested, the defendants' first supplemental answer. Rev. Stats., art. 1188; Dist. Court, Rule 10.

The judgment and the verdict are not supported by the pleadings. Weaver v. Vandervanter, 84 Texas, 693; Railway v. Somers, 78 Texas, 441.

*Fiset & Miller*, for defendants in error.—The witness Sinsheimer was introduced by the plaintiffs to testify in their behalf, and was shown to have been a partner of the defendants' firm at the time of the transaction in question. He testified against the interests of his copartner, and on cross-examination the defendants had the right to show, as they did do, that he had no interest in any judgment that might be rendered against the defendants, and that he was not on good terms with the defendant Heidenheimer.

COLLARD, ASSOCIATE JUSTICE.—P. C. Tomson & Co., plaintiffs in error, resident in Philadelphia, December 24, 1895, sued I. Heiden-

heimer, Jr., and L. Sinsheimer, partners doing business under the firm name of I. Heidenheimer, Jr., & Co., resident in Austin, Texas, on alleged balance due for goods sold defendants on August 8, 1895, consisting of 275 boxes of Hoe Cake soap, at $3.20, and 150 boxes of O. C. W. A. lye, at $2.20, all aggregating $1194, the balance claimed to be $325.

Defendants paid for the soap on August 26, 1895, and were credited with $5, thus leaving alleged balance.

Plaintiffs alleged that they were to furnish, at their own expense, a traveling salesman to assist defendants in selling the goods for a period of three weeks, which agreement, it is alleged, they complied with.

Defendants alleged that plaintiffs had originally shipped them the lye wrongfully, without being ordered, but that they (defendants) subsequently agreed to purchase the same, and at the same time purchased the soap, on condition that plaintiffs should furnish them a salesman who should sell for them more than one-half the lye, the entire purchase being one transaction. Defendants claimed a reduction on the price of the soap, for shortage in weight, $216; storage on the lye, $187, and $28 freight on the lye.

The trial resulted in a verdict for plaintiffs for $80, with interest from January 1, 1896, and judgment was rendered for plaintiffs for $82.67. Plaintiffs have brought the case to this court by writ of error.

The evidence sustains the following conclusions: Heidenheimer & Co. had bought from plaintiffs' agent, Watson, 100 cases of Old Country Wood Ash lye some months before the alleged sale of the 150 cases in suit. There was a cut rate of freight from New York to all points in Texas, including potash. Watson was in Austin and solicited a sale to Heidenheimer of the 150 cases of lye in question. Some negotiations were had, but Heidenheimer declined to take the lye. He had bought a freight car from New York to Austin to ship other goods, and paid the freight charges, and when the car arrived the lye was on board. The entire contents of the car were consigned to Heidenheimer & Co. They paid the freight on the lye at the cut rate. The regular rate was 75 cents, and the cut rate 30 to 35 cents.

After the arrival of the lye, which had been stored in Heidenheimer's warehouse, Watson came along and Heidenheimer demanded of him the freight on the lye—the difference between the regular and the cut rate. Watson declined to pay same. Heidenheimer then held the goods in store for plaintiffs. Watson could not settle with Heidenheimer, who refused to take the lye. Plaintiffs then sent Mr. Wilson, their State agent, to adjust the matter. Plaintiffs had then a car of soap at the depot in Austin. It was then agreed that defendants should take the soap and the lye at stated prices, plaintiffs to furnish a traveling salesman for three weeks, who should sell for defendants one-half the lye. There were twelve or fourteen cases of soap short. The original bill was 275 cases of soap.

Plaintiffs sent a traveling salesman (Watson), who went with Heidenheimer's salesman, and the two together sold about ten cases of the lye,

four of which were returned by the purchasers, Heidenheimer paying freight both ways on the goods returned. Watson sold four or five cases.

The reasonable storage price to Heidenheimer would be 5 to 8 cents per case per month, and plaintiffs were notified of the charge that would be made for the storage of the lye.

The Hoe Cake soap should have weighed twelve ounces to the bar, and the boxes were marked seventy-five pounds each. The soap was bought for full weight. Each box should have contained 100 bars at twelve ounces to the bar, and this soap should have so weighed. The bars of soap in question weighed two to four ounces less than the standard weight of this soap; it weighed from eight to nine ounces, some eight and one-half, some nine ounces.

Defendants had had the soap on hand several months, selling from it. They sold a bill of the soap to Gresham & Co., of Smithville, Texas, and on December 9, 1895, Gresham & Co. wrote Heidenheimer & Co. that the soap, though marked on the box 100 pieces, seventy-five pounds, did not contain seventy-five pounds; that the bars only weighed eight and one-half ounces; that they had established a trade at Smithville on the soap and could not afford to handle "short weight" goods, and would not permit competitors to do so without exposing them to their trade; that they could not use the goods, and that they were still at the depot, subject to Heidenheimer & Co.'s order.

Heidenheimer & Co. did not know, until the Gresham letters were received, that the soap was short in weight. They then weighed it, and its weight was short, as stated. After this Heidenheimer instructed his men not to sell the soap as full-weight soap, but at a reduced price.

Heidenheimer's loss on the soap was three ounces to the bar, or 300 ounces to the case, about nineteen pounds to the case—in all, a loss of $216.

When Heidenheimer & Co. paid plaintiffs for the soap they did not know it was short weight. They at once informed plaintiffs when the fact was ascertained, and informed their agent, Wilson, that they would hold his company for the short weight. Heidenheimer & Co. sold the rest of the soap at reduced prices. They had paid plaintiffs $3.20 per case for it. They had on hand lye previously purchased from plaintiffs, and the sales of lye that were made were filled out of that before purchased, leaving all the lye in question still on hand.

The testimony fully warrants the verdict, which reduces the claim of plaintiff to $80 and interest.

The testimony is conflicting on nearly all the material points, but the verdict settles the conflict in favor of defendants, and authorizes the statement of facts as set out herein.

*Opinion.*— The court did not err in submitting the issue of freight due Heidenheimer. There was testimony authorizing the court's charge. There was testimony that plaintiffs did not comply with the contract made by Wilson with defendants in settlement of the disputes of the

parties.  Plaintiffs having repudiated the new contract by refusal to carry it out, defendants were remitted to their original cause of action, having the right to treat the contract as abandoned.  Railway v. Richards, 30 Law. Rep. Ann., 32 (Illinois Supreme Court), and notes.  This answers both the second and third assignments of error.

The freight charges and storage of defendants were fully proved, and it was not error to submit the issues.  If the court's charge was not full enough as to what constitutes a sale, plaintiffs should have asked instructions covering the omission.

It was not error to allow Sinsheimer to testify to facts showing that he had no interest in the result of the suit.  He had been a partner with Heidenheimer and was sued as such, but had sold to the latter, who had indemnified him as to past liabilities of the firm.  His interest or not was a proper consideration in determining the weight and credibility of his testimony.

The mere fact that a witness's testimony is contradicted by opposing testimony will not warrant proof of his reputation for truth.  Such opposing testimony is not such an impeachment as will put his character for truth in issue, so as to justify proof in support of his character for truth by the party introducing him.  1 Greenl. on Ev., sec. 469; Railway v. Younger, decided by this court at the present term; 1 Whart. on Ev., sec. 569, p. 556, and note 9.

There was no error in permitting defendant Heidenheimer to file a supplemental answer during the progress of the trial showing that Sinsheimer was no longer a member of the firm of Heidenheimer & Co. and was not interested in the suit, and that Heidenheimer had assumed all the debts of the firm and was alone interested in the suit.  The supplemental answer did not change any issue in the case.  Its object was to show that Sinsheimer had no interest in the suit, that he was indemnified, and could recover nothing by the judgment if it went for defendants.  It was irregular, but in our opinion harmless, and not reversible error.  Such matters are largely in the discretion of the court.  Trotti v. Hobby & Post, 42 Texas, 353.  The pleading filed could in no way affect the issues on trial, and the judgment should not in that case be reversed.

Plaintiffs in error present an assignment of error that "the verdict and judgment are not supported by the pleadings."

Plaintiffs sued on account for goods sold and delivered defendants.  Defendants denied, pleaded in reconvention certain matters set up, amounting to more than plaintiffs' debt, did not ask for a rescission, but declared that the sale of part of the goods was never completed and never went into effect.  Plaintiffs recovered only a part of their alleged debt—evidently sustaining portions of the defendants' answer.

We think the verdict and judgment are warranted by the pleadings.  The fact that the court instructed the jury that in a certain contingency plaintiffs would be entitled to the possession of the lye, upon which there was no special finding by the jury, would not change the question

raised in the assignment of error; it would not take the place of pleading. The question raised on the charge and the failure of the jury to find in response to it is not germane to the assignment of error. It is a different question, made in the statement under the assignment, following which there is no proposition. We can only consider the assignment itself and dispose of the question it presents. It presents no ground of error.

The testimony supports the verdict and the judgment, and it is affirmed.

*Affirmed.*