**ALEXANDER et al. v. HANDLEY.**

No. 12483.

Court of Civil Appeals of Texas. Dallas.
Dec. 3, 1938.

Rehearing Denied Jan. 7, 1939.

J. Hardy Neel and Ervin Neel, both of Dallas, for appellants.

John Davis and Bailey & Shaeffer, all of Dallas, for appellee.

LOONEY, Justice.

W. B. Handley (appellee), an attorney, sued Mrs. Blanche M. Alexander and son, Winfield Morten (appellants), on a compromise agreement. The controversy arose substantially as follows: on the death of E. W. Morten, in 1929 (father and grandfather, respectively, of appellants), leaving a will which being objectionable to appellants, appellee was employed to contest same, and thereafter, for several years (until August 1933), represented appellants in matters pertaining to the Morten Estate. In August,. 1933, appellee was discharged by appellants (the reason not appearing) and in lieu J. Hardy Neel, Esq., their present counsel, was employed.

There arose a disagreement between appellants and appellee as to the amount of his compensation for services rendered; appellee claiming a larger amount than appellants were willing to concede, and a larger amount than the sum subsequently agreed upon. This dispute continued until July 26, 1935, on which date the written agreement sued upon was executed. Prior to its execution, L. O. Handley (brother of appellee), who was connected with the real estate department of the Morten Investment Company and a business associate of Winfield Morten, as intermediary, interceded to bring about an agreement between appellants and appellee and, it seems, succeeded. So, on July 26, 1935, Winfield Morten and his attorney, Mr. Neel, went to the office of appellee for the purpose of reducing to writing the agreement, and after some discussion, appellee, in the presence and hearing of the other parties, dictated the agreement to a stenographer; the first draft, proving unsatisfactory for some reason, was discarded and the instrument finally executed was then dictated, and after being written was approved by Mr. Morten and his attorney, Mr. Neel, and was executed by the parties, after a few words were deleted from the second paragraph, which we do not deem of sufficient significance to merit further mention.

The instrument executed by the parties is in form, words and figures as follows:

"Dallas, Texas, July 26th, 1935.
"Mr. Winfield Morten,
"Dallas, Texas.
"Mrs. Blanche M. Alexander, .
"Dallas, Texas.
"Dear Sir and Madam:-

"In Re: Estate E. W. Morten,
Deceased.

"To compromise and settle the matter of the amount owing me for services rendered you in connection with this estate, this will confirm the agreement this day made through L. O. Handley, whereby it is understood that in full and final settlement for such services I shall be paid the sum of $10,000.00, payable $5000.00 on or before November 1st, 1935 and $5000.00 on or before November 15th, 1935. Upon payment of such sums, both of you shall stand fully released and discharged from all claims and demands of every character which I now hold or may be entitled to against either of you.

"It is understood, however, that if such amounts are not paid as above specified, then I shall stand discharged of my agreement to accept $10,000.00 in compromise and settlement of my claim for services rendered, and in any suit which I may institute within three months after November 15th, 1935 for the full amount I contend is due me for my services, neither of you will interpose as a defense therein any statute or law of limitation of this State. This provision shall not be construed as an admission on your part of any amount, and is placed herein for the purpose of tolling the statutes of limitation in the event the $10,000.00 is not paid as above specified.

"Very truly yours,
"(Signed)    W. B. Handley.
"July 26th, 1935.

"We hereby agree and bind ourselves to perform and carry out the above stipulation and agreement in accordance with the provisions thereof.
"(Signed)    Winfield Morten.
"(Signed)    Mrs. Blanche M. Alexander."

Neither the November 1st nor the November 15th installment being paid, appellee made repeated demands upon Winfield Morten for payment, which were not complied with, for the reason, as stated by Morten, they didn't have the ready money and that appellee would have to wait awhile longer. This status continued until two

or three days before the institution of the suit, which was on January 27, 1936.

The nature of the defense urged by appellants is revealed by the following excerpts from their briefs; they say, "The defendants contend that the instrument sued on was not a direct obligation and contract to pay the Ten Thousand ($10,000.00) dollars, but was an offer to compromise and settle an unliquidated account and a conditional contract together with a waiver of a right to plead the statute of limitations. The defendants' contention was that the plaintiff's suit should be on quantum meruit". At another place, they say: "The purpose of the letter above referred to (the instrument sued upon) was to compromise, if possible, an unliquidated account and if this could not be effected then to stop the running of the statute of limitation. The letter first provides for compromise and settlement, and then provides that if such amounts are not paid, that Mr. Handley shall stand discharged of his agreement to accept Ten Thousand ($10,000.00) Dollars in compromise and settlement of his claim, and continues to provide for a remedy in such event. The money was not paid, the condition did not happen and the proposal was ended. The appellee was left to his remedy of a suit on a quantum meruit basis for such fee due him". Again they say that, "The purpose of the letter and the construction and interpretation that the parties placed on the provisions thereof at the time was that the defendants would have the opportunity, if they so elected, to pay the Ten Thousand ($10,000.00) Dollars in compromise and settlement of the claim, and secondly, that (if) this was not done, that the proposal was ended and that the plaintiff would sue on a quantum meruit basis and the defendants waived their right to plead the statute of limitation"; and, in their conclusion, they say: "We submit, therefore, that the contract, when properly construed, gives the appellants the right to either pay the money or waive their right to plead the statute of limitation * * *." At the conclusion of the evidence, the case was submitted to a jury on only one issue, as follows: "Do you find from a preponderance of the evidence that the plaintiff and the defendants herein mutually intended by the terms of the instrument of date July 26, 1935, that if the defendants did not pay on or before the dates mentioned the sums specified therein, that the defendants were not to be bound by any amount stated therein?", which was answered by the jury in the affirmative. Reaching the conclusion that the issue just mentioned should not have been submitted, but that a verdict for appellee should have been directed, the trial court granted appellee's motion for judgment notwithstanding the verdict, from which this appeal was prosecuted.

The questions discussed are properly before us. The instrument sued upon was executed as the result of mutual concessions, or the yielding of opposing contentions, in order to settle differences and avoid litigation—hence, was a compromise agreement. A compromise agreement is defined in 12 C.J. p. 314, sec. 1, as follows: "A compromise is an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences on such terms as they can agree on. It is essential to a compromise that there be mutual concessions or yielding of opposing claims * * *." The agreement involved in the instant case comes clearly within the definition of a "compromise agreement", as above given.

In the first paragraph, appellants obligated themselves unequivocally and unconditionally to pay appellee $10,000 in two installments of $5,000 each. The provision in the second paragraph, discharging appellee from any obligation to accept $10,000 in settlement of his claim, in the event appellants failed to pay the amount agreed upon, within the time stipulated, was for the benefit of appellee, in order to coerce performance by appellants, and is not susceptible of the construction of being merely an option, giving them the right to refuse payment entirely, as they now contend.

Appellants, having refused to comply with their obligation to pay the amounts agreed upon, on or before the dates mentioned (payment being the essential element of the agreement), appellee was authorized, under the terms of the agreement, as well as under general rules of law, to either waive the breach and proceed on the compromise agreement, or else sue on his original cause of action to recover the reasonable value of his services. He elected the former remedy and, in our opinion, his right to do so is fully sustained by the authorities.

The doctrine is announced in 12 C. J. 360, sec. 66, that: "Where the breach

goes to an essential element of the contract and in effect amounts to a refusal to perform or an abandonment, the other party may elect to regard the contract of compromise ·as rescinded and may proceed on the original cause of action. Further, there are some cases which regard a compromise agreement after breach as on the same footing as an executory accord, and which hold that the party to whom performance is due may regard the agreement as having been repudiated by the other party and bring an action on his original demand. The parties may, by express provision in the compromise agreement, stipulate that in case it is not performed in accordance with its terms the party to whom performance is due may resort to his original claim and credit such payments as shall have been made by the other party on account of such original claim". It is also announced in 12 C.J. p. 360, sec. 67, that: "The right to be remitted to his original cause of action is for the benefit of the other party to the compromise, and he may, if he so desire, waive the breach and proceed on the compromise". This doctrine has been recognized and applied in this State. In Scott v. Lott, 247 S.W. 685, the San Antonio Court of Civil Appeals said [page 687]: "And in such suits, upon the breach of an executory contract to compromise, he had the election of seeking, either to enforce that, or be remitted to his original cause of action pleaded. 8 Cyc. 536; 12 Corpus Juris pp. 315–357; Tomson v. Heidenheimer [16 Tex.Civ.App. 114] 40 S.W. 425; 5 R.C.L. p. 895, § 18, and page 901, § 23."

■ The plain import of the language employed by the parties to, express their agreement being unambiguous, the meaning of the instrument was a question of law for the court, and not for the jury; therefore, the court committed no error in disregarding the answer of the jury to the issue erroneously submitted, which, in effect, required the jury to construe an unambiguous instrument; and did not err in rendering judgment on a correct construction of the instrument, notwithstanding the finding of the jury.

' The law on this subject was correctly announced by the Texarkana Court of Civil Appeals, through Judge Willson, in Penn v. Hare, 223 S.W. 527, as follows [page 528]: "The contention is overruled. The contract was in writing, and the doubt as to its meaning arose from the language the parties used, and not from extrinsic matters. In such a case the law seems to be well established that the question as to what the parties meant is for the court, and not the jury. Simkins on Contracts, 494 et seq.; 2 Elliott on Contracts 855, 858; 6 R.C.L. 862, 863; 13 C.J. 796." Also, in Dallas Opera House Ass'n v. Dallas Enterprises, Tex.Civ.App., 288 S.W. 656, affirmed Tex.Com.App., 298 S.W. 397, the trial court was called upon to construe the provisions of the contract involved, and the Austin Court of Civil Appeals, reviewing the case, used the following language [page 661]: "Appellant's other assignments relate to the refusal of the trial court to submit issues with reference to appellant's interpretation of the contract. These assignments are overruled, because it is the duty of the court to construe a contract, and, having construed it against appellant's contention, appellant had no right to have its theory of the interpretation of the contract submitted to the jury."

■ Appellants also seem to insist upon the equitable defense of mutual mistake. That defense, in our opinion, was not raised by either the pleadings or proof. There was· no contention that language was omitted from the agreement that should have been included, or that the agreement contained any language not intended; besides, reformation of the instrument was not sought. The pith of the contention of appellants, as revealed by excerpts from their brief, heretofore set out, is presented in their conclusion, as follows: "We submit, therefore, that the contract, when properly construed, gives the appellants the right to either pay the money or waive their right to plead the statute of limitation * * *." Thus, it is shown that their reliance is based solely upon their view of a proper construction of the instrument.

■ In its last analysis, appellants' contention is that, the only obligation assumed by them was to waive the defense of limitation, in the event appellee sued upon his original cause of action within three months after November 15, 1935; appellee stipulating that, in such event, "this provision (meaning the provision just mentioned) shall not be construed as an admission on your (appellants') part of any amount, and is placed herein for the purpose of tolling the statute of limitation, in the event the $10,000 is not paid, as above specified."

The practical construction given the agreement by the conduct of the parties, in our opinion, refutes appellants' present contention. Both before and after the due dates of the installments, appellee demanded payment; appellants did not then contend that there was no binding obligation on their part to pay; on the contrary, plead for more time. This being a practical construction of the agreement by the parties themselves, would be entitled to great weight in determining its meaning, if it were necessary to resort to that rule of construction, which, however, in our opinion, is not necessary, as the agreement is not of doubtful meaning.

For reasons heretofore stated, we are of opinion that the trial court did not err, therefore the judgment below is affirmed.

Affirmed.