**D. C. RUTHERFORD et al., Appellants,**

v.

**PAGE, SOUTHERLAND & PAGE,**
**Appellees.**

**No. 11610.**

Court of Civil Appeals of Texas.
Austin.

May 29, 1968.

Rehearing Denied June 19, 1968.

Johnson, Jones, Clark & Sheppard, John E. Clark, Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Robert C. McCreary, Mary Joe Carroll, Austin, for appellees.

PHILLIPS, Chief Justice.

Appellants brought their suit in the court below seeking damages for an alleged breach of contract for the lease of an aircraft. The defendants below, and the appellees here, admitted the execution of the contract but asserted that it was void for failure of consideration, lack of consideration, mutual mistake, misrepresentation and the breach of express and implied warranties.

On substantially the same grounds, appellees, by counterclaim, sought rescission of the contract and their special damages

comprised of expenses and rental for the time that the plane was actually used during the period from the date of the lease until notice was given that the lease was null and void because of the material breach arising from the fact that the airplane was not, and since the execution of the lease had not been, airworthy.

At the close of the trial it was stipulated that appellant Rutherford had innocently made false representations as to the airworthiness and safety of the plane; that such were representations of material facts; that such representations had induced appellees to sign the lease; and that had it not been for such representations appellees would not have entered into the agreement.

The case was submitted to the jury on three special issues, hereinafter described, after which the court entered judgment " * * * that the 'Lease of Aircraft' of October 4, 1965 * * * be cancelled, rescinded, set aside and held for naught * * * that the defendants do have and recover of and from the plaintiffs * * * $5,472.15 on defendants' counterclaim for repairs and rental paid plus interest * * * that plaintiffs recover from defendants the costs and repairs in Abilene, to wit * * * $4,850.92 plus interest * * * "

We affirm that part of the judgment rescinding the contract and awarding appellees damages, however, we reform the judgment to deny appellants the damages awarded them by the trial court.

On October 4, 1965 appellants entered into a written lease agreement whereby they leased to appellees, an architectural partnership, a twin-engined Aero Commander Airplane for a period of one year. The lease provided that appellees pay a monthly rental of $352.63 during the term of the lease and required the appellees to keep the aircraft in good repair and return it to the appellants in Austin, Texas *upon the expiration of the term.*

During the discussions and negotiations leading up to the agreement, appellees were told by appellant Rutherford that the aircraft had given him good service, that it had recently undergone a complete, major overhaul and was in good condition, and that it was safe and airworthy.

It later developed that certain of the work supposedly done as a part of the major overhaul had been falsely certified by the mechanic responsible, and that as a result the aircraft was in fact not airworthy; however, it is undisputed that appellant Rutherford believed all of his statements to be true and *bona fides* in representing the aircraft as he did are not questioned.

On October 16, 1965, shortly after appellees took possession under the lease, the airplane sustained substantial damage upon landing in Midland, Texas and appellees contracted to have it repaired there. The repairs required considerable time to complete and during this time appellees decided to have the required Federal Aviation Authority annual inspection performed by mechanics who were repairing the plane.

While the repairs were being made and the inspection being performed, it was discovered that certain false entries had been made in the aircraft log book by the mechanic who had performed the last major overhaul, and that, unknown to the parties hereto, certain required maintenance items had been certified by that mechanic as having been performed, when in fact they had not been performed.

Performance of the repairs occasioned by the accidental damage, together with the required annual inspection, and the additional maintenance and modifications occasioned by the prior fraudulent conduct of the mechanic, proceeded concurrently and required some four months to complete. The total charges assessed for all of the labor and parts for all of the functions performed amounted approximately to $10,500, $6,800 of which was reimbursed by insurance.

Upon learning of the total of $3,700 expense attributed by their mechanics to the

annual inspection and the correction of the falsely-certified overhaul, appellees called upon appellants to pay part or all of this amount. A conference was held between the parties hereto whereby Rutherford agreed to pay $1,000 of the amount due.

The jury, in answer to special issue No. 1 found that appellant Rutherford subsequently told appellees' bookkeeper, in a telephone conversation in late February, that he would not perform his part of this agreement. The bookkeeper immediately told appellee Louis Southerland of Rutherford's decision after which Southerland dispatched their pilot to Midland to pay the repair bills *in toto* and fly the aircraft back to Austin.

The aircraft was returned to Austin by the pilot on either the same day or the next day. The aircraft remained in Austin until March 3 when it was flown by one of the appellees from Austin to Lubbock on a business trip. On the return flight from Lubbock the left engine ceased to function. The airplane was landed at an airport in Abilene, and left there by appellees, who returned to Austin by commercial flight and notified appellants a week later that they were cancelling the lease because the aircraft was not, and had never been during the term of the lease, airworthy. One of appellees later went to Abilene to see that the aircraft was stored properly.

Appellants, finding it impossible to sell the aircraft in Abilene, paid the $4,850.92 necessary to put the aircraft in flying condition, together with the hangar rental and certain other related expenses, and returned the aircraft to Austin. Appellants then filed this suit to recover lost rentals from appellees because of the cancellation of the lease, as well as the costs of repairs made and storage charges incurred at Abilene and the cost of returning the aircraft to Austin, less the $1,000 which appellant had agreed to pay previously. Appellees counterclaimed for the amount of rental actually paid by them under the lease, together with the $3,700 in annual inspection and other repair costs incurred earlier at Midland, and for certain smaller repair costs, and for other relief, including cancellation of the lease.

Appellants moved for judgment at the close of the evidence, but the trial court overruled the motion and submitted the case to the jury on three special issues inquiring (1) whether Rutherford told appellees' bookkeeper that he would not perform his part of the promise agreement that had been reached in mid-February, (2) whether the appellees could have minimized the cost of storing the aircraft in Abilene, and (3) the amount by which appellees could have reduced the storage charges in Abilene.

The jury found that Rutherford did advise appellees' bookkeeper that he would not perform his part of the agreement, that appellees could have minimized the storage charges, and that the amount by which they could have been cut was $350.

Upon this verdict, the trial court entered a judgment granting appellees rescission of the lease as of March 10, 1967, and recovery of the $1,410.52 in monthly rental paid and the $4,061.63 in repair expenses paid, which included the $3,700 expense of the annual inspection and the corrective repairs made at Midland. The court granted appellants a judgment for $4,850.92 for the costs of the actual repairs made at Abilene, but not the storage charges or the cost of returning the aircraft to Austin.

Appellants are before this Court on sixteen points of error, the first nine, briefed together, being that of the court in overruling appellants' motion for an instructed verdict because the undisputed evidence shows, as a matter of law, that by their conduct appellees ratified the lease in question after discovering grounds for rescission thereof; because the undisputed evidence shows, as a matter of law, that by their conduct appellees elected not to rescind the lease in question after discovering grounds for rescission thereof;

because the undisputed evidence shows, as a matter of law, that by their conduct appellees waived the right to rescind the lease in question after discovering grounds for rescission thereof. The next six points refer to special issue No. 1 in that the trial court erred in overruling appellants' objection to special issue No. 1 because the matter inquired about in said special issue was not an ultimate fact issue in the case and had no legal significance in the case, the evidence showing as a matter of law that appellees ratified the lease in question after the conversation inquired about in said special issue; because the matter inquired about in said special issue was not an ultimate fact issue in the case and had no legal significance in the case, the evidence showing as a matter of law that appellees elected not to rescind the lease in question after the conversation inquired about in said special issue; because the matter inquired about in said special issue was not an ultimate fact issue in the case and had no legal significance in the case, the evidence showing as a matter of law that appellees waived the right to rescind the lease in question after the conversation inquired about in said special issue; in refusing to disregard the jury's answer to special issue No. 1 and grant appellants' Motion for Judgment, the answer to said special issue being immaterial and of no legal significance because the evidence showed as a matter of law that appellees ratified the lease in question after the conversation inquired about in said special issue; in refusing to disregard the jury's answer to special issue No. 1 and grant appellants' Motion for Judgment, the answer to said special issue being immaterial and of no legal significance because the evidence showed as a matter of law that appellees elected not to rescind the lease in question after the conversation inquired about in said special issue; in refusing to disregard the jury's answer to special issue No. 1 and grant appellants' Motion for Judgment, the answer to said special issue being immaterial and of no legal significance because the evidence showed as a

matter of law that appellees waived the right to rescind the lease in question after the conversation inquired about in said special issue.

We overrule these points.

The gist of appellants' position here is that appellees were asserting a right to rescind the lease agreement because of the defective condition of the aircraft; however, that a compromise agreement was reached by the parties hereto in mid-February; that an agreement was reached to apportion the cost of putting the aircraft into the condition that everyone concerned had, prior to that time, believed it to be in; that the aircraft was thoroughly worked over, repaired and maintained, given a required F.A.A. annual inspection, relicensed, and certified as airworthy by qualified mechanics. Further, that according to the jury's finding, appellant Rutherford had refused to pay the $1,000 he had agreed to in order to put the aircraft back in acceptable condition; however, how appellant Rutherford's share of the expense was to be paid was not specifically fixed or clearly understood by the parties.

Appellants further contend that when appellees learned of Rutherford's refusal to pay his share of the Midland repair expenses, they were put to an election. They could treat Rutherford's refusal to perform as a breach of the compromise agreement excusing them from performance of their agreement to continue the lease in effect, and assert their right to rescind the lease; or they could stand upon the agreement, insist upon the payment of the $1,000 which Rutherford had agreed to pay, and treat the lease as still in effect. That on March 3, one of the appellees used the aircraft on a business trip, there having been no attempt on the part of the appellees to assert a cancellation of the lease. That appellees did not elect to cancel the lease. Instead they continued to accept the benefits of the lease, using the aircraft and treating it as their own. Having done so, they cannot later seek rescission citing

Hallwood Cash Register Co. v. Berry, 35 Tex.Civ.App. 554, 80 S.W. 857 (Dallas 1904, no writ); Houston Motor Car Co. v. Brashear, 158 S.W. 233 (Tex.Civ.App. Galveston 1913, writ dism'd); Payne v. Baldock, 287 S.W.2d 507 (Tex.Civ.App. Eastland 1956, writ ref'd, n. r. e.); Rosenbaum v. Texas Building and Mortgage Company, 140 Tex. 325, 167 S.W.2d 506 (Tex.Com.App. 1943).

We do not agree with appellants' version of the law applicable to the facts before us.

With respect to Mr. Louis Southerland's testimony relative to the mid-February meeting discussed above we have the following testimony:

"Q  Do you recall the purpose of that meeting?

A  Yes, the plane had been giving trouble ever since we had it. Every other trip, some terrible thing would happen to it and it would be attended by horrendous expenses, and I was appalled by the situation, and so our partners, we got together with our lawyer, and we decided that we had better talk with Mr. Rutherford and give this airplane back to him, that in the first place, you just can't continue with an airplane that has an accident due to no fault of the pilot or you, and it costs such a tremendous amount of money—we had only flown it about ten hours, and the expenses on the airplane had amounted to about a thousand dollars an hour, and it was just completely ridiculous, so I went to that meeting determined to give the plane back to the man, let him sweat with it, because it was not the plane that was represented to us, and as a result of our attitude, he agreed to pay a thousand dollars toward it, and to keep from having court action and a court suit, and all, we went on one more trial on it.

Q  All right, sir; now, do you recall what the agreement was, or what the agreement was between you and Mr. Rutherford at this meeting, what the thousand dollars was to be used for?

A  Well, we had a bill there from Rich-air, something over ten thousand dollars, and it was assumed at that point that the insurance company would come through with their part of it which was nearly seven thousand; left about $3,700, as I recall, that had to be paid by us or Mr. Rutherford, and he agreed, as I stated, to pay a thousand dollars, and so, the bill was due, and naturally, we would pay the balance and he would pay this thousand. That was the agreement, and we would go on from there."

The relicensing and certification to which reference was made was the inspection at Midland, discussed above, for which appellees had paid approximately $3,700. A day or two after the plane was returned from Midland to Austin, it was used on the above-mentioned trip to Lubbock. At that time the left engine went out completely. The pilot described the event as follows:

"A  *  *  *  The first indication I was having trouble with the engine was when I couldn't get any more climb out of it, it ceased to climb. We had—Well, I had this airplane as high as fifteen thousand feet before and when it ceased to climb, I knew something somewhere was wrong, and I started checking then, and my temperatures, my oil temperature was normal, my oil pressure was normal, and my head temperature was going down; which it not being normal with the engine being normal, but with the windmilling, you would have oil pressure, and not having been stopped long enough, the oil temperature would remain constant for two or

three or four minutes, because it would take that long for it to start cooling the oil down, where the head temperature would cool down immediately, due to the fact that the cylinder heads was exposed to the flow of air.

Q Do you know whether the instruments were working at that time?

A Yes, they—I was satisfied they were working. They had been working prior to take-off, and throughout the flight up to that time, I had no reason to doubt them."

Later, the pilot testified with regard to the source of the trouble in the engine:

"Q Mr. Morgan, do you know which cylinder it was that gave trouble on that engine and caused it to fail?

A Yes; rather than give it by number, which many—I get the numbers on these cylinders turned around a little once in a while, but, now, this was the left engine, and it was a six cylinder opposed engine, and it was the front inboard cylinder. This is the same cylinder that had the wrong rocker arm on it. This is the cylinder that I spoke of as the stack broke on."

After receiving notification of rescission of the lease, appellant Rutherford went to Abilene. A portion of his testimony relative to his trip there is as follows:

"Q Did you investigate the possibility of rebuilding that old engine?

A Well, they wouldn't, Mr. Martin wouldn't touch that engine. He said the only thing it was worth anything at all to us was the case, and they had this all disassembled, as I told you a minute ago, and in the bottom of the oil pan there wasn't any oil, but there was just—you could pick up some sand, and there was oil on the sand, but the crank shaft was

burned blue. The cylinders, the pistons, everything in this engine was burned.

Q Was that left engine, then, replaced?

A Was it replaced?

Q Yes.

A Yes, sir."

The issues raised by the nine points to which the above is in reply are purely questions of law. By Motion for Instructed Verdict, objection to the submission of special issue No. 1, and Motion for Judgment disregarding the jury's answer to special issue No. 1, the plaintiff-appellants took ths position that as a matter of law defendant-appellees had either ratified the lease, elected not to rescind, or waived their right to rescind. No request for submission of additional issues was made by the plaintiff-appellants. Texas Rules of Civil Procedure 279 specifies that: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived."

■ There is no question that the discovery of the defective condition of the plane when it was repaired and inspected at Midland gave the defendant-appellees a right to rescind the lease contract. The stipulation of the parties, quoted above, so establishes, and the initial—mid-February—right to rescind is not questioned here. The primary contention made by the plaintiff-appellants is that the defendant-appellees as a matter of law lost their right to rescind. That contention is apparently based upon the concepts of accord and satisfaction, ratification, waiver of the right to rescind, and election not to rescind. Such affirmative defensive issues must be specifically plead. Tex.R.Civ.P. 94. Specifically in answer to defendant-appellees' counterclaim the plaintiff-appellants plead only a number of exceptions and a general denial, but allegations contained in earlier

paragraphs of their pleading presumably were considered sufficient to raise those defenses.

At the conference held in mid-February, after the defective condition of the plane was discovered, Rutherford promised to pay $1,000 of the charges for inspection and reconditioning. That fact is conceded; it is also conceded that Rutherford did not pay—and has not paid—the amount agreed upon.

■■■ The mere promise to pay did not, as a matter of law, deprive the defendant-appellees of their right to rescind. As the Court pointed out in Alexander v. Handley, 136 Tex. 110, 146 S.W.2d 740 (1941), "* * * an unexecuted accord is no defense to a suit on the original cause." (146 S.W.2d 742) Noting the reasoning behind the rule, the Court continued (146 S.W.2d 742):

> "The sound principle supporting the rule is that the creditor has agreed to accept performance in discharge of the original claim and that to limit his rights to suit upon the accord 'would in effect put him in the same position that he would have occupied if he had agreed to accept the accord and not its performance as the satisfaction of the debt.' Accord and Satisfaction, by Samuel Williston, 17 Harvard Law Review, pp. 459, 462; Williston on Contracts, 1920 Ed., Vol. 3, p. 3164, Sec. 1842."

With regard to the previous holdings on the point by the courts of this state, the Court explained (146 S.W.2d 742):

> "The Texas decisions relied upon by plaintiffs in error are Ashbrook v. Neal, Tex.Civ.App., 103 S.W.2d 1101; Cobb & Gregory v. Parker, Tex.Com.App., 236 S.W. 1108; Street v. Smith Brothers Grain Co., Tex.Civ.App., 225 S.W. 778; Camden Fire Insurance Co. v. Baird, Tex. Civ.App., 187 S.W. 699; Ferguson-Mc-Kinney Dry Goods Co. v. Garrett, Tex. Com.App., 252 S.W. 738; Tomson v. Heidenheimer, 16 Tex.Civ.App. 114, 40

S.W. 425. In each of these cases the defendant pleaded an unexecuted accord in defense of the plaintiff's suit on the original demand and in each case it was held that such accord did not constitute a defense."

Insofar as they rely upon the mid-February conference and Rutherford's promise to pay, the plaintiff-appellants are obviously taking the position that a mere accord—as a matter of law—constituted a defense to defendant-appellees' cross-action for rescission, or that the defendant-appellees in fact accepted the promise alone as both accord and satisfaction.

An unexecuted accord is no defense to a suit on the original cause. Rutherford did no more than promise to pay. That fact alone did not—could not—as a matter of law deprive the defendant-appellees of their right to rescind the contract. An accord without complete satisfaction does not bar a suit on the original cause of action. Also see Wardy v. Casner, 108 S.W.2d 772 (Tex.Civ.App. El Paso 1937, writ dism'd); De la Garza v. Ryals, 239 S.W.2d 854 (Tex. Civ.App. Fort Worth 1951, writ ref'd n. r. e.); and Sinclair Houston Federal Credit Union v. Hendricks, 268 S.W.2d 290, 43 A. L.R.2d 1234 (Tex.Civ.App. Galveston 1954, writ ref'd n. r. e.).

■■ Unquestionably a promise alone may be accepted as satisfaction, but whether it is or not depends upon the nature of the agreement. Of major importance is the intent of the parties. In McCarty v. Humphrey, 261 S.W. 1015 (Tex.Com.App.1924), the Court, in an opinion adopted by the Supreme Court, classified as an "elementary principle" that (261 S.W. 1016):

> "* * * accord and satisfaction, being dependent upon agreement, only occurs where the parties mutually assent to it. There intention is a controlling element. In such a transaction 'there can be no agreement expressed or implied when both parties have no intention to make it, or when one has but the other has not.'

Railway v. Gordon, 70 Tex. 80, 85, 7 S.W. 695, 697."

As has been shown above, the appellees, as parties to the mid-February conference, were uniform and positive in their testimony that the condition upon which they agreed to continue the lease was Rutherford's payment—not his promise of payment—of the $1,000. Rutherford's testimony might be construed as indicating an intention to pay at some future date it is conceded that he did not pay when the bill was due and that at no time thereafter has he offered to pay.

■ The burden of proof in establishing the alleged defense of accord and satisfaction was on the appellants as cross-defendants in the trial court.

Special issue No. 1 to which the jury found that Rutherford told appellees' bookkeeper that he would not perform his part of the agreement was based upon the holding of the Supreme Court in Pacific Employers Insurance Co. v. Brannon, 150 Tex. 441, 242 S.W.2d 185 (1951), to the effect that an accord unbreached by the debtor is a defense against suit on the claim. Consequently, the jury's finding on this issue means that the mid-February accord was not only unsatisfied but it was breached and did not deprive the appellees of their right to rescind the contract.

■ The next question is whether any subsequent event constituted either ratification of the lease, waiver of the right to rescind, or election not to rescind. Since no special issues thereon were either submitted or requested, appellants are therefore forced by Tex.R.Civ.P. 279 to contend that as a matter of law appellees either ratified, waived the right to rescind, or elected not to rescind.

The facts upon which the contention is based are that after Rutherford breached his agreement to pay $1,000 on the inspection and repair bill, defendant-appellees paid the entire bill on or about February 25, 1966; that they had the pilot bring the plane back to Austin on or about March 1, 1966 and that Louis Southerland, one of the defendant-appellees, used the plane on the Lubbock trip on March 3, 1966, when the left engine failed and the plane had to be left in Abilene. The letter of rescission was sent on March 10, 1966.

■ None of those facts nor the combination thereof is sufficient to constitute, as a matter of law, either ratification or election not to rescind or waiver of the right to rescind. In Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951), the Supreme Court pointed out that (235 S.W. 2d 977):

"While proof of an ultimate fact by other relevant facts and circumstances may sometimes be so conclusive even in, the absence of direct evidence as to compel a finding of its existence as a matter of law, see, Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S. W.2d 711; Duke v. Houston Oil Co. of Texas, Tex.Civ.App.1939, 128 S.W.2d 480, Writ dism. judgment correct; 20 Amer.Jur.Sec. 1189, p. 1042, this will be true only where reasonable minds might not differ as to the inference to be drawn. Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1, 17 Tex.Jur. 907, et seq."

■ Ratification and waiver involve the question of intent, Humble Oil and Refining Co. v. Jeffrey, 38 S.W.2d 374 (Tex.Civ. App. Austin 1931) aff'd 55 S.W.2d 521 (Tex.Com.App.); Athans v. Rossi, 240 S.W. 2d 492 (Tex.Civ.App. Fort Worth 1951, writ ref'd n. r. e.).

The elements of waiver, ratification or election not to rescind were not conclusively established as a matter of law. At best under the evidence jury questions were presented. No such issues, however, were either submitted or requested, consequently they were waived. Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529 (Tex.1965).

Consequently, we hold that the authorities cited by appellants with respect to

appellees having elected not to rescind the lease are not in point here.

Appellants' points ten, eleven and twelve, briefed together, are the errors of the trial court in allowing the appellees to rescind the lease in question as of March 10, 1966, appellees having attempted to rescind solely on the ground that the aircraft was not airworthy as of that date, there being no evidence to support such asserted ground, the evidence being insufficient to raise the issue of non-airworthiness as of such date, and the undisputed evidence showing that the aircraft was certified airworthy immediately prior to said date and was in appellants' sole possession and control from the date of certification until said date of rescission.

We overrule these points.

It was stipulated that Rutherford represented to appellees that the airplane was in first-class condition, that it was safe and airworthy, and that it was for the purposes and use intended and further stipulated that "such representations were false." Rescission was asserted because of the lack of airworthiness of the plane which was discovered during the Midland repair and inspection and which was made known to Rutherford as soon as it was reported to appellees.

■ A certificate of airworthiness may create a presumption to that effect, but such presumption can be rebutted by overwhelming evidence to the contrary, Upper Valley Aviation, Inc. v. Fryer, 392 S.W.2d 737 (Tex.Civ.App. Corpus Christi 1965, writ ref'd n. r. e.). During the five months that appellees attempted to operate under the lease, they were able to actually use the plane little more than a dozen hours. During most of that period the plane was in the repair shop in Midland. Almost immediately thereafter the plane failed again.

Appellants' points fourteen, fifteen and sixteen, briefed together, are the errors of the court in holding that the appellees were entitled to recover the cost of the repairs made to the aircraft in Midland, there being no pleading or evidence that such repairs were necessary or that the cost thereof was reasonable; that without such element of damage there is no evidence to support a judgment for appellees for $5,472.15.

We overrule these points.

■ Appellants not only stipulated that Rutherford represented to appellees that the airplane was in first-class condition, that it was safe and airworthy and fit for the purposes and use intended; that such representations were representations of material facts; that such representations induced the appellees to sign the lease; but that for such representations the appellees would not have entered into the agreement; and that such representations were false, it was further stipulated that appellees relied upon the representations and therefore "incurred the expenses shown on Defendants' Exhibit No. 14." Surely the appellants are now in no position to complain of a judgment against them for damages which they themselves stipulated were incurred because of their own false representations.

■ Moreover, there is abundant evidence to support the necessity for the repairs. At no point is there any question of the necessity or reasonableness of the repairs made. There was detailed evidence describing what was wrong with the airplane. The list of parts used in repair was admitted into evidence. The repairs were made by certified mechanics. The work done constituted mandatory compliance with airworthiness directives. There was sworn testimony that the itemized bill showing charges for both parts and labor was "full and correct," consequently an inference that the cost of the repairs was reasonable logically follows.

■ We might also point out that in Paragraph VII of Appellants' First Amended Original Petition and Answer to Defendants' Counterclaim, it was admitted that in

Midland "it was discovered that * * * certain *necessary* repairs or modifications of the aircraft had not been performed though required" (emphasis added). Appellants are bound by their own judicial admissions. Stanolind Oil and Gas Company v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 570 (1939).

Appellees have two cross-points, which we sustain, to the effect that the trial court erred in awarding damages to appellants since the lease under which they sought to recover such damages was cancelled, set aside and held for naught, and appellees were absolved from any liability thereunder; that there was pleading and no evidence to support such a recovery.

■ Appellees complain here of that portion of the judgment of the trial court authorizing any recovery by appellants inasmuch as the contract, having been properly rescinded by one portion of the judgment, could not reasonably and logically be enforced by another portion of the judgment. No alternative cause of action was either plead or proved. Consequently, we hold that there is no legal basis for any award of damages to appellants.

■ All parties gave notice of appeal in the trial court. Appellees were not obliged to file a motion for new trial because there was no complaint with regard to the jury verdict. There was no jury finding whatsoever authorizing the award of any damages to appellants. Damages were not sought in any pleadings of appellants. Under this state of the record, appellees were justified in their cross-point before us. Dallas Electric Supply Co. v. Branum, 143 Tex. 366, 185 S.W.2d 427 (Tex.1945).

■ Since appellants did not restrict their appeal to that of the judgment which was adverse to them, but instead appealed from the judgment in its entirety, appellees were not obligated to perfect an independent appeal from that portion of the judgment adverse to them. Dietz v. Van Nortwick, 188 S.W.2d 590 (Tex.Civ.App.

Galveston 1945, writ ref. w. o. m.) ; Archer v. Griffith, 390 S.W.2d 735 (Tex.1965); Jackson v. Ewton, 411 S.W.2d 715 (Tex. 1967).

As was stated above, appellants neither plead nor proved any cause of action which would entitle them to recover for any amount which they expended in replacing the defective left engine on their own airplane. No issue was submitted or requested which would justify or sustain an award of damages to appellants on the basis of any negligence on the part of appellees. The evidence presented by the appellees here was sufficient to rebut any presumption of negligence on their part under proof of bailment and injury. Falls Church Airpark Co. v. Mooney Aircraft, Inc., 254 F.2d 920 (5th Cir. 1958.)

Consequently, that portion of the judgment complained of here by appellants is affirmed and further that the judgment be reformed to deny the appellants the damages awarded to them by the trial court. It is further ordered that the costs of the suit be assessed against the appellants.

Judgment of the trial court is reformed and as reformed affirmed as indicated.

Reformed and affirmed.