**Orie G. NORMAN, Ind. and d/b/a Norman Construction Company, Appellant,**

**v.**

**SAFWAY PRODUCTS, INC., Appellee.**

**No. 16728.**

Court of Civil Appeals of Texas.

Dallas.

May 27, 1966.

James H. Martin, Dallas, for appellant.

Passman, Jones, Stewart, Andrews & Hunter, Paul L. Salzberger, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Safway Products, Inc. sued appellant Orie G. Norman, doing business as Norman Construction Company, for $240.26 on an alleged written lease contract, and in the alternative for conversion of part of the leased property consisting of scaffolds of the value of $170.26. Appellee also pleaded ratification and estoppel.

Appellant in his sworn answer alleges that he never executed any written contract with appellee or agreed to pay for any materials described in appellee's petition. He further alleges that he never at any time had possession or control of the scaffolds. Still further he alleges that appellee leased the scaffolds to one Charlie Scoggins, who at all times pertinent hereto had possession and control of the property.

Judgment in a nonjury trial was rendered against appellant for $245.26, which amount includes $75 attorney's fee.

## EVIDENCE

The undisputed evidence offered in behalf of appellee as well as appellant is that no written contract was ever signed by either appellant or appellee.

It is also undisputed that the rentals for the leased scaffolds have been paid in full. In fact, appellant received a small refund on rentals previously paid but unearned. The only controversy is with reference to an alleged shortage in the property when turned back to appellee.

Appellant is a building contractor whose office was located at 127 West Jefferson Avenue in Dallas, Texas. He was engaged in the construction of two apartment buildings, one at 1401 Plowman Street and the other at 501 North Marsalis Street in Dallas, Texas.

Appellant testified that Charlie Scoggins is a bricklayer and was a subcontractor on the above construction jobs; that he, appellant, furnished the bricks, but did not furnish the scaffolds for the bricklayers— that was for Scoggins to do and Scoggins did. However, appellant frankly admits that he paid three months' rentals due appellee on the scaffolds, but such payments were made as advances to Scoggins on Scoggins' subcontract. Appellant also admits that he received the monthly statements for rentals due and that he paid them for Charlie Scoggins. But he denied ever receiving the original invoice on which appellee claims the lease terms were printed.

Questions were propounded to appellant in an effort to show that Scoggins told appellant that he, Scoggins, was in financial distress and asked appellant to pay the rentals for him as an advance on his subcontract. Objections to these questions were sustained on the ground that they sought to elicit hearsay testimony.

Bob Bates, dispatcher and warehouse supervisor, testified for appellee. He received a telephone call from a person who purported to speak for Norman Construction Company and ordered the scaffolds to be delivered to the job site at 501 North Marsalis. Bates, who did not know Norman, looked the latter up in Dun & Bradstreet, found his credit rating satisfactory, so dispatched appellee's delivery truck to the job site. The truck driver could not find the site and returned to appellee's warehouse.

Bates testified that he then dialed the telephone number listed in the telephone directory for Norman Construction Company. A woman answered the phone saying, "Norman Construction Company." Upon request the woman not only gave instructions as to how to get to the site, but doubled the order for scaffolds. Accordingly, appellee's truck driver delivered the property and obtained a signed receipt. The signature on the receipt is not legible. There is no testimony as to who signed the delivery ticket. The truck driver did not testify. Bates said that he did not know Norman or his company and never communicated with the company except as above stated.

Dan Closser, Vice-President of appellee, also testified. He first described appellee's business procedures. After leased property is delivered appellee prepares invoices consisting of one original and ten copies. The original is mailed to the customer. On the reverse side of the original invoice the terms of the lease are printed. The copies do not have these terms set out on their reverse side.

As to whether the original invoice was mailed to appellant, Closser's testimony was as follows:

"THE COURT: Do you know of your own personal knowledge that that invoice was mailed to the address of the defendant as shown on the invoice?

"THE WITNESS: No, I don't, personally. It's customary to mail them. I didn't mail it personally."

Statements of rentals due are sent each month as the rentals accrue. However, these monthly statements do not include the terms and conditions of the rental agreement.

The terms and conditions printed on the reverse side of appellee's printed forms for original invoices include a provision as follows:

"The leased equipment shall be at the sole risk of LESSEE from injury, loss or destruction and in case it or any part thereof be destroyed, damaged or lost, whether with or without fault on the part of LESSEE, LESSEE shall pay to the COMPANY at the address as shown on the face of this form, a sum equal to COMPANY'S list price for the same, or similar equipment."

## OPINION

◼ In his first point on appeal appellant challenges the jurisdiction of the County Court at Law. His contention is that this is a justice court suit for $170.26, that the attorney's fee of $75 is not to be included in determining the jurisdictional amount.

We do not agree with appellant. The terms and conditions of the lease agreement as printed on the reverse side of the original invoice include a provision for attorney's fee. Under the circumstances the attorney's fee is properly an element of damage, not mere court costs, in appellee's pleaded suit on the written contract. Super-Cold Southwest Co. v. Pennington, 231

S.W.2d 687 (Tex.Civ.App., no writ hist.); Jones v. McKinney, 224 S.W. 720 (Tex.Civ. App., no writ hist.); 15 Tex.Jur.2d 502; 35 Tex.Jur.2d 344. Appellant's first point is overruled.

◼ As we have stated, neither party signed any written contract. Nevertheless, the trial court's Findings and Conclusions include Conclusion No. 1, as follows:

"A valid written contract was entered into between SAFWAY PRODUCTS, INC. as Lessor and NORMAN CONSTRUCTION COMPANY as Lessee which, oral at its inception and later reduced to writing, was fully performed by Plaintiff and acted upon, acquiesced in, assented to and accepted by NORMAN CONSTRUCTION COMPANY."

The substance of appellant's second point is that he was never informed of the alleged written contract, which admittedly neither party signed, therefore the document cannot serve as a basis for judgment against him though some of its provisions were performed.

The gist of appellee's second and third counterpoints is that the trial court properly held that there was a written contract. Appellee argues that since appellant accepted the benefits of the contract under the terms printed on the back of the original invoice he is bound by the said terms and is responsible for the shortage in the equipment which was disclosed upon its being returned to appellee. In support of this view we are cited among other authorities to The Houston & T. C. R. Co. v. Chandler, 51 Tex. 416; Gilbert v. Texas Co., et al., 218 S.W.2d 906, 941–942 (Tex.Civ.App., ref. n.r.e.); 13 Tex. Jur.2d 135, 218.

◼ The above cited authorities are not in point. The holding in the Chandler case was based on ratification. In order for ratification to be applicable it must be shown that the person ratifying did so with knowledge of the facts. Carlile v. Harris, 38 S.W.2d 622, Tex.Civ.App.; 2 Tex.Jur.2d

534; 2 C.J.S. Agency § 42, pp. 1081–1083; 17A C.J.S. Contracts § 521, p. 1004. In the instant case appellee failed to show that appellant ever received the original invoice with the terms and conditions printed on the back or knew of said terms and conditions. Closser, for appellee, frankly admitted that he did not know of his own knowledge that the original invoice was mailed to appellant. The latter denied very positively that he received the invoice.

In the Gilbert case above cited it was held that whether a formal signing of a written draft of a contract is essential is a matter of intent. The court held that letters between the parties were merely parts of their negotiations and did not constitute a written contract. No such situation is presented here.

■ As to estoppel, the rule is that a contract cannot be created by estoppel. Snow v. Gibraltar Life Ins. Co., 326 S.W. 2d 501 (Tex.Civ.App., ref. n.r.e.); Mercer v. Knox, 193 S.W.2d 885 (Tex.Civ.App., no writ hist.); Oxford v. Rogers, 238 S.W. 295, 297, Tex.Civ.App.

There is no evidence in the record that appellant converted the scaffolds to his own use. The only testimony on the point offered by appellee was that of appellee's Vice-President, Dan Closser. He frankly stated that he did not know what happened to the equipment. When asked whether he thought Norman stole it he replied, "I don't think he stole it."

Appellant's second point on appeal is sustained.

■ Appellant's third and fourth points are not briefed so we shall not pass on them. Carrick v. Hedrick, 351 S.W.2d 659, 662 (Tex.Civ.App., no writ hist.); Parks v. Underwood, 280 S.W.2d 320 (Tex.Civ.App., ref. n.r.e.); Kelley v. City of Austin, 268 S.W.2d 773 (Tex.Civ.App., no writ hist.).

The record indicates that the facts have been fully developed in this case. Therefore the judgment of the trial court will be reversed and judgment here rendered that appellee take nothing in its suit against appellant.

Reversed and rendered.