N. S. SAWYER and Laura
Oppelt, Appellants,

v.

Walt PIERCE and Pat Pierce, Appellees.

No. 1330.

Court of Civil Appeals of Texas,
Corpus Christi.

March 30, 1979.

Rehearing Denied April 19, 1979.

James H. Denison, Jr., Denison & Mann, Harlingen, for appellants.

William L. Hubbard, Neal Bonner, Bonner & Bonner, Harlingen, for appellees.

## OPINION

NYE, Chief Justice.

Walt Pierce and his wife, Pat, purchasers of certain improved real estate, brought suit against the sellers, N. C. Sawyer and Laura Oppelt, seeking rescission and cancellation of a real estate transaction and the return of their cash investment in the property, including the cost of repairs and added improvements. The sellers defended on the basis that the purchasers had waived their right to seek rescission and cancellation by ratifying the contract in question. After a trial before the court, sitting without the intervention of a jury, the court entered judgment rescinding the contract, cancelling the conveyance and awarding the purchasers a joint and several judgment against the sellers for $16,370.56. The sellers appeal.

The property in question, commonly called the Holiday Apartments and Trailer Park, was located in Arroyo City, Cameron County, Texas, and contained slightly less than one acre of land. The improvements

included: 1) a large house which had been divided into four apartments; 2) an outbuilding containing two baths and showers; 3) a pier extending into the adjacent arroyo; and 4) several improved trailer spaces all located on the property. The availability of this property for purchase was described and advertised in a typed brochure and indicated that inquiries should be directed to N. C. Sawyer (one of the appellants) at his address in San Antonio.

Mrs. Pierce, the buyer, originally learned that the property was for sale when her employer, Nussbaum Realty of Brownsville, Texas, received one of the brochures describing the property. The brochure contained numerous statements concerning the property, including the statement that "There's room for 30 trailer spaces . ." On July 21, 1976, Mrs. Pierce, who was a licensed real estate agent, attempted to contact Sawyer in San Antonio to obtain a listing on the property. Thereafter, Mr. and Mrs. Pierce became interested in buying the property for themselves.

The record indicates that Mrs. Pierce visited the property at least three times before the sale was consummated. During her first visit, which occurred immediately prior to her trip to San Antonio, she talked with a Mr. Garza who was in possession of the property under a contract for deed from Mr. Sawyer. After returning from San Antonio, Mrs. Pierce and her husband visited the property a second time when Mr. Garza was not present. During this visit, the Pierces walked around the premises, walked onto the pier, and looked into the outbuilding containing the bath and showers. During the third visit, Mr. Garza showed them through each of the apartments and the outbuilding. Mr. Garza informed them that he had been living on the property for approximately two years and that he had not operated the property very much be-

cause he was a minister and was gone much of the time. Mr. Garza told the Pierces that he obtained approximately $45.00 per month for the trailer spaces and that the apartment rental amount varied.

Thereafter, Mrs. Pierce contacted Mr. Sawyer and arranged for a meeting. Sawyer and appellant Oppelt, Sawyer's personal secretary, met the Pierces in Harlingen, Texas. As a result of this meeting the Pierces and Sawyer entered into a contract for the sale of the property to the Pierces. On August 17, 1976, the sale was closed and the property was conveyed to the Pierces by warranty deed. The consideration was $10,000.00 cash, the execution and delivery of a $60,000.00 note and the contractual obligation to install at purchasers' own expense "no less than ten trailer hookups" and to "replace all rotten lumber and paint said apartment house" within six months from the closing date of the sale. The obligations under the contract of sale and under the note were secured by a deed of trust on the property.

The Pierces took possession of the property and initiated their plans to develop the property for commercial purposes. In September of 1976, they were advised by the Cameron County Building Department that no more than fifteen trailer spaces could be developed on the property because the property was less than one acre and county regulations prohibited the placing of more than fifteen units on one acre of land. At first, the Pierces thought that this was an innocent mistake of fact on the part of the sellers, however, other disparities between the typed brochure and the condition of the premises soon became apparent thereafter. On September 27, 1976, the Pierces sent a letter to Sawyer and Oppelt complaining of the disparities and requested a compromise settlement.[1] On November 17, 1976, appel-

---

1. "Enclosed is the check of $400.00 for Oct 76 interest. . . . There is only one stool & one lavatory that is hooked up & neither of them work. The roof on the building that they are in must be replaced & the roof in the main house leaks. 3 of the four air conditioners in the house are malfunctioning but of course they are more than three years old and that is about as long as they last year without being rebuilt. The pier and bulkhead is so corroded it is too dangerous for the public without a great deal of work plus a complete new wiring job. Of course there are many other things that were misrepre-

lant Oppelt sent the Pierces a letter which refused their settlement offer.

On January 5, 1977, an attorney for the Pierces attempted to notify appellant Sawyer by letter that the Pierces intended to rescind their purchase of the property. This letter remained undelivered. Thereafter, a second notice letter dated February 17, 1977, was sent and received by Sawyer. When Sawyer refused to accept the Pierces' offer to rescind, the Pierces did not make any further improvements to the property or further payments under the note. The Pierces then filed this suit against Sawyer and Oppelt. Sawyer then started foreclosure procedures under the deed of trust. On May 3, 1977, a foreclosure sale was held pursuant to the terms of the deed of trust. The property was sold to Sawyer himself for $35,000.00. By cross-action appellant Sawyer sought $28,200.00 for a deficiency between the amount the property brought at the trustee's sale and the obligations on the real estate contract and note.

The Pierces claimed in their suit against the appellants that the following statements contained in the original brochure that they received were false. They are, in relevant part, as follows, that:

1) "All [apartments] have 23,000 BTU new Whirlpool air conditioners, . ."

2) "Addn. Building: Separate from the apt. building there are 2 complete showers, comodes (sic), and lavatories for people to use that fish, picnic or trailers that are not modern."

3) "Bulkhead: Double cypress power driven into the ground at the waters edge, secured to extra long high line poles power driven into the ground, all secured to a 'dead man' high line pole to prevent erosion."

4) "The Marshall Hutt Rd. (which this property fronts on) is the highway leading to the Lagune Atascosa Refuge, in Sept. this year they are to begin construction of a Scenic Rd. from Rio Hondo through Arroyo City, the game reserve to South Padre Island [will enhance] value of this property greatly."

5) "There is additional land owned by the owner of this property that lies between the bulkhead and the south boundary of the ship channel that is ideal for building house boats, boat houses, and boat docks."

6) "This property has not been managed in the summer—in the winter the income is $535. from the apts. $150. for 3 of them—$85. for 1—One can get as high as $25. per night for the apts. offering lighted fishing from the 60' pier."

7) "There are presently 13 trailer spaces that rent for $65. per month in the winter—which is $845. per month—total monthly winter income $1,380. There is room for a total of 30 trailer spaces which will bring in $1,950. monthly, plus the apts. total app. $2,500. per month—."

The trial court found that: 1) the defendants made each of the above representations to the purchasers concerning the property in question during the course of the negotiations leading to the execution of the real estate sales contract; 2) the defendants made such representations for the purpose of inducing the purchasers to enter into the real estate sales agreement; 3) the purchasers relied upon such representations; 4) such representations were materially false; 5) the sellers were aware that such representations were materially false; 6) the

sented but we feel sure they were not intentional. Our main concern is the county zoning laws & requirements for a travel trailer park. The only way we were able to put in the 8 trailer spaces was because the 13 hookups that were in are too close together to be allowed. Also the existing septic tanks were not adaquete (sic). . . . Walt and I have talked it over and have agreed that you probably did not mean to misrepresent the income potential and would want to be fair without us being out the expense of legal counsel. If we could do this without hiring a lawyer we feel that a notarized statement to the effect that we had fulfilled the trailer space requirements & the house painting & repairs (we have the estimation (over a thousand) & of course the painting we will complete in the six months—and give us credit of $5,000.00 on the unpaid principal of $60,000 we could make the place in the condition it was represented.

[Signed]: Mr. & Mrs. W. E. Pierce."

sellers' misrepresentations were made prior to the execution of the real estate sales contract; 7) the purchasers did not have knowledge that such representations were false; and 8) the purchasers expended certain sums as a result of the agreement to purchase the property in question, in addition to the cash downpayment ($10,000), interest payments for five months ($2,000), and six enumerated repairs and improvements to the property ($4,370.56).[2] Based on these findings of fact, the trial court awarded judgment to the Pierces setting aside and rescinding the real estate sales contract upon which the transaction was based and awarding them $16,370.56.

■ The sellers bring forward thirty-five points of error for our consideration. Appellants attack the trial court's failure to file additional findings of fact requested by them in support of their defense that the purchasers were not entitled to the remedy of rescission because they had ratified the real estate sales contract in question as a matter of law. The refusal of the trial court to adopt the sellers' tendered findings of fact was tantamount to findings against this defense. See *Thompson v. Lee Roy Crawford Produce Co.*, 149 Tex. 357, 233 S.W.2d 295, 297 (1950); *Sauer v. Johnson*, 520 S.W.2d 438, 441 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); *Missouri Pacific Railroad Co. v. Trautmann Bros.*, 301 S.W.2d 240, 243 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.).

■ Next we must decide whether or not the evidence as a whole demonstrates that the purchasers ratified the fraudulent misrepresentations of the sellers as a mat-

ter of law. There are certain set rules that we must follow when considering such a question. Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate. Ratification occurs when one, induced by fraud to enter into a contract, continues to accept benefits under the contract after he becomes aware of the fraud, or if he conducts himself in such a manner as to recognize the contract as binding. Once a contract has been ratified by the defrauded party, the defrauded party waives any right to seek rescission. *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex.Civ. App.—Corpus Christi 1977, writ dism'd); *Kunkel v. Kunkel*, 515 S.W.2d 941 (Tex.Civ. App.—Amarillo 1974, writ ref'd n. r. e.); *Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892 (1960); *Rosenbaum v. Texas Building & Mortgage Co.*, 140 Tex. 325, 167 S.W.2d 506 (1943); *Payne v. Baldock*, 287 S.W.2d 507 (Tex.Civ.App.—Eastland 1956, writ ref'd n. r. e.).

■ The key element which must be proved to establish ratification of the fraudulent conduct is that the ratifying party had full knowledge of the fraudulent acts at the time he ratified these acts. *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd); *Most Worshipful Grand Lodge Free & Accepted Masons of Texas v. Hayes*, 82 S.W.2d 411 (Tex.Civ.App.—Dallas 1935, no writ). See also *Rourke v. Garza*, 530 S.W.2d 794 (Tex. Sup.1975); *Viracola v. Dallas International Bank*, 508 S.W.2d 472 (Tex.Civ.App.—Waco 1974, writ ref'd n. r. e.); *Norman v. Safway*

---

**2.** The trial court also found:

9. "The following are found to exist with regard to said representations:

a. The income from the apartments was never as high as $535.00 per month;

b. The apartments on the property never rented for as much as $25.00 per night;

c. There was not room on the property to construct a total of thirty (30) trailer spaces;

d. The land between the bulkhead and the ship channel is subject to erosion and accretion and is further subject to Navigation District control as to the construction of the buildings;

e. There were no plans to construct a road adjacent to the property through to Port Isabel;

f. That the bulkhead was not constructed as represented and had been recently filled with dirt to replace dirt which had eroded;

g. There were no showers, commodes, or lavatories, and such plumbing facilities as were there were not hooked up;

h. The roof leaked; and

i. The air conditioning units were 3½ years old."

*Products, Inc.*, 404 S.W.2d 69 (Tex.Civ.App. —Dallas 1966, no writ); *Woods v. Fisher*, 106 S.W.2d 774 (Tex.Civ.App.—Texarkana 1937, no writ).

■ The question of ratification of a contract is usually a mixed question of law and fact. *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd). If the evidence of ratification is uncontroverted or uncontrovertible, then the question of ratification could be determined as a matter of law. *Rosenbaum v. Texas Building & Mortgage Co.*, 140 Tex. 325, 167 S.W.2d 506 (1943); *Powell v. Rockow*, 127 Tex. 209, 92 S.W.2d 437 (1936); *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ. App.—Corpus Christi 1977, writ dism'd); *Gaston v. Copeland*, 335 S.W.2d 406 (Tex. Civ.App.—Amarillo 1960, writ ref'd n. r. e.). However, when the act or acts of ratification are controverted, the question of ratification becomes one for the trier of facts. *Missouri Pacific Railway Co. v. Brazil*, 72 Tex. 233, 10 S.W. 403 (1888); *Wise v. Pena*, 552 S.W.2d 196, 200 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Indemnity Insurance Company of North America v. Sterling*, 51 S.W.2d 788 (Tex.Civ.App.— Beaumont 1932, writ dism'd).

Mrs. Pierce testified, in substance, that her offer to purchase the property for $70,-000 was predicated upon her estimation of the value of the property based upon income projections from expected rental income for thirty trailer spaces plus rental income from the house and apartments. When it became evident that the property would support a total of only fifteen trailer spaces pursuant to county regulations, Mrs. Pierce testified she wrote the September 27 letter in an attempt to reach a settlement agreement concerning the purchase price "so that we might not have a complete loss on income-producing property that wouldn't produce what it was represented to." The sellers did not notify the purchasers of their refusal to accept the terms of the proffered settlement agreement until November 17, 1976, when Oppelt sent a refusal letter to the Pierces. During this time, the purchasers tried to sell the property, but no purchaser was located. Mrs. Pierce testified to the effect that she and her husband thought that the representations made by the sellers were innocent until sometime in January, over a month after they received Oppelt's November 17 letter. It was then that they acquired information that the sellers knew of the county regulations at the time the representations were made to them. It was immediately thereafter that the purchasers notified the sellers of their intent to rescind the contract.

■ Ratification and waiver involve the question of intent. *Humble Oil & Refining Co. v. Jeffrey*, 38 S.W.2d 374 (Tex. Civ.App.—Austin 1931) aff'd, 55 S.W.2d 521 (Tex.Comm'n App.1932, jdgmt. adopted); *Rutherford v. Page, Southerland & Page*, 429 S.W.2d 602, 610 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.); *Athans v. Rossi*, 240 S.W.2d 492 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n. r. e.); 10 Tex.Jur.2d, Cancellation of Instruments, §§ 57–58 (1959). See *Rosenbaum v. Texas Bldg. & Mortg. Co.*, 140 Tex. 325, 167 S.W.2d 506, 508 (1943); *United Parcel Service v. Helen of Troy Corp.*, 536 S.W.2d 415, 417–18 (Tex. Civ.App.—El Paso 1976, no writ). None of the purchasers' acts, nor a combination thereof, is sufficient to establish ratification of the contract with full knowledge of the sellers' misrepresentations as a matter of law. The purchasers' delay or their conduct prior to their February rescission letter was not necessarily inconsistent with an intention of avoiding the agreement. Conflicting inferences concerning the purchasers' intent are raised by the evidence. At most, factual issues concerning sellers' defenses of ratification were raised. The trial court's express findings and its refusal to make the requested findings amounted to contrary findings which cannot be set aside on appellants' legal sufficiency points. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1957). See *Thompson v. Lee Roy Crawford Produce Co.*, 149 Tex. 357, 233 S.W.2d 295, 297 (1950). Looking at the evidence only in the light most favorable to the purchasers' position, as we must, we find that there is evidence in the record to support the trial

court's negative findings concerning the sellers' defensive issue of ratification. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.Sup. 1965); *Biggers v. Continental Bus System,* 157 Tex. 351, 303 S.W.2d 359, 363 (1957). We cannot say that the evidence, when considered as a whole, conclusively establishes ratification as a matter of law.

We next turn to the purchasers' points of error which attack the trial court's findings concerning the ten separate misrepresentations. Although the trial court found that ten separate misrepresentations had been made by the sellers, the appellants contend that the crux of the dispute between the parties concerns the representation that "there is room for a total of 30 trailer spaces. . . ." These points of error attacking the trial court's findings are, again in effect, legal sufficiency points which presents a question of law.

As a general rule, the following elements must appear to constitute actionable fraud based upon misrepresentation: 1) that a material representation was made; 2) that it was false; 3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that it should be acted upon by the party; 5) that the party acted in reliance upon it; and 6) that he suffered injury thereby. The gist of such an action is found in the fraud of the defendant and damages to the plaintiff. Each of these elements must be established with a reasonable degree of certainty. The absence of any one of them will, of course, prevent a recovery. *Custom Leasing, Inc. v. Texas Bank & T. Co. of Dallas,* 516 S.W.2d 138, 143 (Tex.Sup.1974); *United States Steel Corp. v. Fryer,* 493 S.W.2d 487, 491 (Tex.Sup.1973). See *King v. Tubb,* 551 S.W.2d 436, 440–41 (Tex.Civ.App.—Corpus Christi 1977, no writ); *Traylor v. Gray,* 547 S.W.2d 644, 650 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Menking v. Bishman Manufacturing Co.,* 496 S.W.2d 762, 765–66 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Long v. Smith,* 466 S.W.2d 32, 36 (Tex.Civ.App.—Corpus Christi 1971,

writ ref'd n. r. e.). A simple statement or representation standing alone does not create a cause of action for fraud. The statement must be proved to be false, and before a false statement becomes actionable, there must be a reliance by the complainant to his detriment. *Menking v. Bishman Manufacturing Co.,* 496 S.W.2d 762, 766 (Tex.Civ. App.—Corpus Christi 1973, no writ); *Finger v. Morris,* 468 S.W.2d 572 (Tex.Civ.App. —Houston [14th Dist.] 1971, writ ref'd n. r. e.).

In point of error number two, the sellers generally attack the trial court's finding that each and all of the representations were material. However, the point of error is somewhat limited.

"The trial court erred in finding that all of the representations made by Sawyer and Oppelt regarding the property were material in that as a matter of law only the representation regarding the number of trailer spaces which could be placed on the property could arguably be material."

In order to constitute a suitable basis for a decree of cancellation, the misrepresentation alleged must relate to a material fact. In order to make it material, proof must be made that it induced the complaining party to enter into the contract. See *Putnam v. Bromwell,* 73 Tex. 465, 11 S.W. 491 (1889); *Nimmo v. O'Keefe,* 204 S.W. 883 (Tex.Civ. App.—Fort Worth 1918, no writ); 25 Tex. Jur.2d, Fraud & Deceit, § 15, p. 630 (1961). The appellants told the Pierces that "There is room for a total of 30 trailer spaces which will bring in $1950 monthly, plus the apartments, total approximately $2500 per month." The Pierces testified repeatedly that the determining factor in their decision to buy the property was their income projections based upon income generated, in part, from 30 trailer spaces and that if there wasn't room for that many spaces there would not be sufficient income generated to finance the purchase of the property. Mrs. Pierce testified in substance that all of their plans were dependent upon the potential available number of trailer spaces. Appellants' arguments and authorities relating to this point of error, in effect, admit

that there is evidence in the record to support the trial court's finding that the representation concerning the available number of trailer spaces was a material representation. We agree there was ample evidence to support this finding.

The only other points of error directly relating to the trial court's findings that the sellers fraudulently misrepresented the potential trailer spaces available are points numbers 3, 12 and 28. In point of error number 12, appellants contend that there is no evidence in the record that the statement concerning the available number of trailer spaces was false. Under this point of error, appellants argue that there is no evidence that there was not room for 30 trailer spaces.

The contract of sale under which Mr. Garza had possession of the property in question was introduced into evidence. This contract also required Garza to place additional trailer spaces on the property. Garza testified that when he had applied to the county officials to obtain the permit to place additional trailer spaces on the property, the request was refused because of the county regulations concerning the number of trailer spaces. Garza testified that he informed appellant Oppelt of this county regulation and of his inability to obtain such a permit. It is undisputed that Oppelt drafted the brochure concerning the property on behalf of Sawyer and herself. There is ample evidence in the record that she did so knowing that the county regulations that were then in effect would preclude more than fifteen trailer spaces on the property, and that the representation in question was false. Appellants' point of error number 12 is overruled.

In point of error number 28, the appellants generally contend that the trial court erred in entering judgment in favor of the Pierces because, at the time of the closing of the sale, the Pierces were in possession of sufficient knowledge to put them on inquiry, and therefore were charged with knowledge, as a matter of law, of all facts which a proper inquiry would have revealed. The appellants contend that the

only misrepresentation which the trial court found to exist, and of which the Pierces did not have full knowledge, was their representation regarding the number of trailer spaces that could be placed on the property in question. Appellants apparently contend that the accuracy of the representation regarding the trailer spaces could have easily been checked out by simply contacting the Cameron County Building Department. In this argument, the appellants indirectly raised the question of how this representation should be characterized.

We recognize the general rule that everyone is presumed to know the law and therefore has no right to rely upon representations by others as to what the law might be. Such representations are to be treated as mere statements of opinion and not of fact. In this instance, the misrepresentation was not clearly a misrepresentation as to a matter concerning the law. Compare *Safety Casualty Company v. McGee*, 133 Tex. 233, 127 S.W.2d 176 (1939). The appellants contend that the particular misrepresentation here was merely that the property had sufficient room for thirty trailer spaces. Although there is evidence to the contrary, there is ample evidence in the record from which the trial court could have reasonably concluded that Sawyer and Oppelt had actual knowledge that as a matter of fact thirty trailer spaces could not be placed on the property due to the county regulations. The misrepresentation was not that "the county regulations permit 30 trailer spaces on less than 1 acre of land." The misrepresentation was, only at most, an indirect misrepresentation of a legal matter and thus, the principles pertaining to representations as to matters of law are not absolutely analogous.

One notable exception to the general rule is that where one party who possesses superior knowledge as to the law takes advantage of the other party's ignorance in that respect, and intentionally makes a misrepresentation concerning the law for the purpose of deceiving the other party and actually succeeds in that respect, may be held responsible for his conduct.

*Safety Casualty Co. v. McGee*, 133 Tex. 233, 127 S.W.2d 176, 178–179 (1939). In *Safety Casualty Company v. McGee*, 133 Tex. 233, 127 S.W.2d 176, 178 (1939), our Supreme Court cited with approval the following statement of the exception:

> " 'The same is true where one who himself knows the law deceives another by misrepresenting the law to him, or knowing him to be ignorant of it, takes advantage of him through such ignorance, or where the person to whom the representations are made relies upon the supposed superior knowledge and experience of the other party and on his statement that it is unnecessary or inadvisable for him to consult a lawyer.' "

Here we have at most a mixed question of law and fact. Actually, it may have been possible to physically place thirty trailers on the land in question, but the county regulations (law) prohibited more than fifteen spaces in this particular case. The appellants knew of this regulation and deceived and misrepresented the facts to the appellees. There was a second material misrepresentation in the latter part of appellants' statement: that it was possible for the property to produce $1950 monthly income from the thirty trailer spaces. The evidence in the record showed that the Pierces were totally inexperienced in the mobile-home trailer park business. It was undisputed that the Pierces had no actual knowledge of the county regulation in question. There is ample evidence in the record that the sellers (appellants) knew of the county regulation in question and, in spite of that knowledge, intentionally and fraudulently made the misleading statement concerning the number of trailer spaces which could be placed in operation on the property and the amount of money such spaces would generate. There is evidence to support the trial court's finding. We hold that the appellees were not charged with knowledge of the fraud as a matter of law. Appellants' point of error number 28 is overruled.

■■■ What we have said under the above points of error is equally applicable to the only other point of error (three) which is related to the trial court's findings concerning fraudulent misrepresentation of the available trailer spaces. The sellers bring forward no other points of error attacking these findings. Even if it could be said argumentatively that the sellers' points of error relating to the other misrepresentations have some merit because of appellees' knowledge, the misrepresentations concerning the availability of additional trailer spaces, standing alone, are sufficient to support the trial court's judgment rescinding the contract.

■■■ The sellers' remaining points of error complain of the trial court's judgment allowing the purchasers to recover from the sellers the sum of $16,370.56. This case was tried before an able trial judge. He made extensive findings of fact. In addition to the expressed findings, the record shows that these same appellants have sold and resold this same property four or five times and have repossessed it the same number of times at a later date after each sale. They inferentially admitted, in effect, that the property wasn't worth the amount of the original sales price when they sold it at the trustee's sale. This is so, because they bid it in at their own sale at one-half ($35,-000.00) of the original sales price ($70,-000.00) less than a year after the sale had been consummated to these appellees. This was even after extensive improvements had been made to the property by the appellees. Then the appellants, without any actual notice to the appellees that if such property failed to bring at least the amount of the unpaid obligation at the trustee's sale, they would seek a judgment against the appellees for the deficiency between the amount realized at the trustee's sale and the remaining obligation under the deed of trust. In this case, they received both the property in question and, in addition, sought a deficiency judgment by way of a cross-action for $28,200.00. See *Crow v. Heath*, 516 S.W.2d 225 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).

The trial court had the opportunity to see the parties and the witnesses, observe their demeanor, and judge their credibility. He

could believe that which he perceived to be the truth and disbelieve that which did not comport to his experience as a judge. The appellants' points of error are all legal sufficiency points or law questions based on the facts and evidence presented to the trial court. Appellants did not request any specific requests for findings for equitable adjustments in their favor, nor did they file objections to the findings in support of the trial court's monetary award. The primary purpose of a suit such as this to cancel a contract obtained by fraud is to undo the fraud and place the parties in their original position. *Finch v. McVea*, 543 S.W.2d 449, 452 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *Howard v. Burkholder*, 281 S.W.2d 764 (Tex.Civ.App.—Amarillo 1955, writ dism'd). Where relief is finally granted, the original status of the parties must be restored as nearly as possible. In this case, possession and title to the property had been restored to Sawyer when he instituted foreclosure proceedings and purchased the property and secured possession at the foreclosure sale. We, therefore, find and conclude that the trial court correctly adjusted the equities in the damages awarded to appellees. All of appellants' points of error have been considered and are overruled.

The judgment of the trial court is AFFIRMED.