DECISION
Before this Court is Cardiovascular Thoracic Associates, Inc.'s (hereinafter "Plaintiff") prayer for a preliminary injunction. Plaintiff seeks to enjoin James G. Fingleton, M.D. (hereinafter "Defendant") from applying for and/or exercising privileges at the Miriam Hospital and from seeing patients or performing surgery at the Miriam. Jurisdiction is pursuant to R.I.G.L. 1956 (1985 Reenactment) § 8-2-13.
Facts/Travel
Defendant, a cardiovascular and thoracic surgeon, served a residency at Wayne State University in Detroit, Michigan between 1990 and 1993. Upon completion of his residency, Defendant accepted a Fellowship at the Royal Brompton Hospital in England. Thereafter, Defendant responded to an advertisement placed by James J. Yashar, M.D. (hereinafter "Dr. Yashar") in the Annals of Thoracic Surgery and inquired about a position with Plaintiff, of which Dr. Yashar is the principle.
In early 1993, Dr. Yashar responded to Defendant's inquiry and, during a preliminary conversation, advised Defendant that it was his desire to retire in a few years and, in the meantime, he was seeking an associate surgeon with whom to affiliate. This affiliation would ease Dr. Yashar's professional burdens in terms of work load and would allow him more time to spend with his family and more time to travel. It would also afford a young surgeon the opportunity to eventually take over a practice alleged to have been described as a "gold mine."
Dr. Yashar called Defendant at the end of May, 1993 and scheduled an interview in early June, 1993. Defendant travelled to Rhode Island and, during their meeting, Dr. Yashar reiterated that he wanted to retire and that his practice would become Defendant's upon Dr. Yashar's retirement. Defendant was also told by Dr. Yashar that he would never find another opportunity like this anywhere.
During the interview process, Dr. Yashar informed Defendant that he needed someone immediately and that Defendant should forego the fellowship at Royal Brompton Hospital. Upon determining that he could be relieved of his commitment in England, Defendant accepted Dr. Yashar's offer of employment.
In June, 1993, CT Associates and Defendant entered into an employment agreement. Thereafter Defendant moved from Detroit to Providence with his family. Defendant's wife is a physician who left an active practice in Detroit to accompany him to Providence.
In August, 1993, Defendant commenced employment with Dr. Yashar. Approximately one week after his employment began, Defendant learned, after reading a newspaper article, that Dr. Yashar had been disciplined by the Board of Medical Licensure and Discipline as a result of an incident involving patient care. The article stated that the Miriam now required Dr. Yashar to practice with an associate. This was the first time that Defendant had received any negative information about Dr. Yashar.
After confronting Dr. Yashar about the article, Defendant was told by Dr. Yashar that the incident occurred on a day in which he had already performed two surgeries, that he was tired while performing the third surgery and the patient did not survive. Defendant subsequently learned that there was a different version of these events which did not reflect well on Dr. Yashar and which resulted in disciplinary action. Dr. Yashar had failed to inform Defendant of this incident prior to executing the employment contract. As a result of the foregoing, Dr. Yashar's medical privileges at the Miriam were suspended for twenty-one days; Dr. Yashar and the Hospital entered into a Memorandum of Understanding, which required Dr. Yashar to recruit an associate cardiac surgeon to assist him; further, other restrictions were placed on Dr. Yashar's practice. None of these facts had been made known to Defendant during his pre-employment conversations with Dr. Yashar.
During the ensuing months, the relationship between Defendant and Dr. Yashar deteriorated. On February 24, 1995, Defendant terminated his employment with Dr. Yashar and CT Associates. Since that time, Defendant has joined the Thoracic and Cardiovascular Surgical Center, Inc. (hereinafter "TCS"), which conducts a major part of its practice at the Miriam. Dr. Yashar now moves to enjoin Defendant from seeing patients and performing surgery at the Miriam and from applying for medical privileges at the Miriam pursuant to a noncompetition provision in the subject employment contract.
The Preliminary Injunction
Granting a preliminary injunction, which is an "extraordinary remedy," is within the sound discretion of this Court. City ofWoonsocket v. Forte Brothers, 642 A.2d 1158 (R.I. 1994); Brownv. Amaral, 460 A.2d 7, 10 (R.I. 1983). The plaintiff bears the burden of demonstrating: (1) that the plaintiff is likely to succeed on the merits of the claim; (2) that if the injunction is not granted, the plaintiff will suffer immediate and irreparable injury, and (3) the balance of the equities favors injunctive relief. Leone v. Town of New Shoreham, 534 A.2d 871, 873 (R.I. 1987); R.I. Turnpike Bridge Authority v. Cohen, 433 A.2d 179, 182 (R.I. 1981).
First, for Plaintiff to prove that it is likely to succeed on the merits, Plaintiff must demonstrate the reasonableness, and thus enforceability, of the noncompetition agreement. Whether a restrictive convenant is reasonable is ultimately a question of law to be determined by the Court. Durapin, Inc. v. AmericanProducts, Inc., 559 A.2d 1051, 1053 (R.I. 1989). The party seeking to enforce a noncompetition provision must show that (1) the provision is ancillary to an otherwise valid transaction or relationship, (2) the provision is supported by adequate consideration, and (3) there exists a legitimate interest that the provision is designed to protect. Id.
Plaintiff relies on the noncompetition provision of the employment contract in support of its motion for preliminary injunction. The provision states that
 [Dr. Fingleton] covenants and agrees that for a period of two (2) years following the termination of this Agreement he will not become an employee of, or enter into any exclusive contract with, the Miriam Hospital, any associated foundation or any other entity related in any way whatsoever to the Miriam Hospital.
Plaintiff asserts that Defendant's current association with TCS, which conducts the majority of its surgical procedures at the Miriam, violates the aforementioned noncompetition agreement.
Alternatively, Defendant argues that the noncompetition provision is not "ancillary to an otherwise valid transaction." Specifically, Defendant asserts that the employment contract is invalid since Dr. Yashar's concealment of the disciplinary measures taken against him amounted to fraudulent misrepresentation. This Court agrees.
Fraud is a false or misleading statement of material fact that was known to be false and made with the intent to deceive, upon which the innocent party relies. National CreditAdministration Board v. Regine, 795 F. Supp. 59 (D.R.I. 1992). A misrepresentation becomes material when it is likely to affect the conduct of a reasonable person with reference to the transaction with another. Dudzik v. Leesona Corp., 473 A.2d 764 (R.I. 1984). Under Rhode Island law, fraud may be grounded in either affirmative acts or concealment. In Re DiMartino,108 B.R. 394 (D.R.I. 1989). Moreover, fraud can be established by silence where the business relationship of the parties is such as to create a duty to disclose certain facts. Kennett-Murray Corpv. Bone, 622 F.2d 887, 892 n. 4 (1980).
In the instant case, Dr. Yashar had a duty to inform Defendant of his suspension and the restrictions subsequently placed upon him by the Miriam during the contract discussions. Defendant specifically asked Dr. Yashar during the first interview about his malpractice situation and Dr. Yashar stated that no cases were pending. Although, technically, no cases were pending against Dr. Yashar, this Court believes that Dr. Yashar's lack of candor about the Miriam situation was a fraudulent misrepresentation. The business relationship between the two physicians would be an extremely close association in which each, to varying degrees, was to be reliant upon, and trusting of, the judgment of the other. Defendant was fraudulently induced to enter into the employment agreement as a result of Dr. Yashar's intentional failure to disclose pertinent information that, if known to Defendant, would likely have affected his conduct, i.e. his decision to enter into the employment agreement. The Court is satisfied that, had Dr. Yashar apprised Defendant of the disciplinary action taken by the Board of Medical Licensure and Discipline and the restrictions subsequently placed on his medical privileges at the Miriam, Defendant would not have joined Dr. Yashar's practice.
Nonetheless, Dr. Yashar argues that a valid contract exists since Defendant ratified the agreement. Specifically, Dr. Yashar argues that Defendant ratified the employment agreement by accepting the benefits of the contract and working for Plaintiff for approximately sixteen months.
Ratification means that one affirms that which he has a right to repudiate. Poweroil Mfg. Co. v. Carstensen, 419 P.2d 793
(Wa. 1966). What must be proven to establish ratification of fraudulent conduct is that the ratifying party had full knowledge of the fraudulent acts at the time he ratified these acts.Sawyer v. Pierce, 580 S.W.2d 117, 122 (Tex.Civ.App.-Corpus Christi 1979); Wise v. Pena, 552 S.W.2d 196, 200 (Tex.Civ.App.-Austin 1977). Consequently, ratification involves a question of intent to ratify. Sawyer at 123; Humble Oil Refining Co. v. Jeffrey, 38 S.W.2d 374 (Tex.Civ.App.-Austin 1931).
This Court is satisfied that Defendant never intended to ratify the employment contract. It is clear from Defendant's testimony that by staying in Plaintiff's employ, Defendant was simply attempting to make the best of his employment situation. Defendant's professional hands were tied. After relinquishing the fellowship in England, and after moving his family from Detroit to Providence, it would have been professionally and personally unreasonable for Defendant to rescind the employment agreement upon learning of Dr. Yashar's deceit. Defendant was a credible witness and his version of events persuasive.
From the evidence before it, this Court finds Dr. Yashar's intentional concealment of this material information was deceitful and amounted to a fraudulent misrepresentation. This Court further finds that the noncompetition provision upon which Dr. Yashar and Plaintiff rely is not ancillary to an otherwise valid agreement. Thus, there is no reasonable likelihood that Plaintiff will succeed on the merits of its claim.
Next, Plaintiff must demonstrate that it will suffer immediate and irreparable harm absent the injunction. With respect to this, Plaintiff contends that allowing Defendant to maintain staff privileges, thus enabling him to see patients and conduct surgical procedures at the Miriam, will result in irreparable harm to Plaintiff. In addressing this issue, a discussion of the hospital procedures regarding privileges is warranted.
Currently, the Miriam has only six slots available for cardiac surgeons on its staff. The Miriam has allocated two slots for cardiac surgeons employed full-time by the hospital, and two slots are held by surgeons associated with TCS. The remaining two slots are held by Plaintiff, one for Dr. Yashar and one which was conditionally allotted to Defendant.
As part of Dr. Yashar's Memorandum of Understanding with the Miriam, reinstatement of his clinical privileges was conditioned on his recruitment of an associate cardiac surgeon. Defendant was that associate. If Defendant is allowed to maintain his privileges at Miriam, thus filling the 6th slot, Plaintiff argues that Dr. Yashar will be forced to violate the Memorandum of Understanding since he will be unable to recruit another associate surgeon as there will be no slot available for this assistant.
Alternatively, Defendant argues that no harm will result to Dr. Yashar since the Hospital voted to change that requirement of the Memorandum of Understanding. In lieu of requiring Dr. Yashar to add another associate, the Hospital agreed that Defendant and another reputable surgeon will provide back-up medical coverage for Dr. Yashar. Since this proposal provides Dr. Yashar with reliable surgical assistance, Dr. Yashar will suffer no irreparable harm. Accordingly, this Court finds that Plaintiff will not suffer irreparable harm in the absence of the issuance of the requested preliminary injunction.
Finally, in order to grant the preliminary injunction, Plaintiff must prove that the balance of the equities favors injunctive relief. In other words, the relief sought must be weighed against the harm which would be visited upon the other party. In Re State Employees Union, 587 A.2d 919, 925 (R.I. 1991). When balancing the equities in this case, the harm that Defendant will suffer from the granting of the injunction clearly outweighs the harm Dr. Yashar will suffer absent the issuance of the injunction.
Defendant is a skilled cardiovascular and thoracic surgeon. To preclude Defendant from operating at the Miriam for two years would cause significant harm to Defendant and the public. Enjoining Defendant from the Miriam would adversely affect his ability to grow in the field of cardiovascular surgery and would deprive the public of the services of a well-respected surgeon.
Moreover, since a preliminary injunction proceeding is an equitable one, the plaintiff who comes into a court of equity must come with "clean hands." Rodriques v. Santos,466 A.2d 306, 311 (R.I. 1983). Our Supreme Court has held that the doctrine of unclean hands "becomes operative . . . when a complainant must depend on his own improper conduct to establish his rights against the other party to the suit." Id. (quotingSchool Committee of Pawtucket v. Pawtucket Teachers Alliance,Local No. 930, 101 R.I. 243, 257, 221 A.2d 806, 815 (1966)). The party seeking equity must show that his conduct has been fair, equitable, and honest as to the controversy. Collens v. NewCanaan Water Co., 234 A.2d 825 (Conn. 1967). Consequently, "[t]he court will not lend its aid to one guilty of fraud."Rodriques at 311; (quoting Silva v. Merritt, Chapman ScottCorp., 52 R.I. 30, 33, 156 A. 512, 514 (1931)).
In the present action, the fraud resulting from Dr. Yashar's failure to disclose the information surrounding his disciplinary action more than tips the scales of equity in favor of Defendant. Dr. Yashar came to this Court with "unclean hands." This Court can afford no privilege to Dr. Yashar, who, the Court believes in the circumstances of this case, had an obligation to reveal to Defendant that his medical privileges were suspended for twenty-one days; that the Miriam imposed restrictions upon his practice; and the Disciplinary Board was conducting an investigation of the incident.
Attorney's Fees
Finally, both Plaintiff and Defendant request that reasonable attorney's fees be granted pursuant to R.I.G.L. 1956 (1985 Reenactment) § 9-1-45. Section 9-1-45 states that
 The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court (a) finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party. (emphasis added)
Justiciable is defined as "a matter appropriate for court review. A controversy in which a present and fixed claim of right is asserted against one who has an interest in contesting it." BLACK'S LAW DICTIONARY 865 (6th ed. 1990). Even though the evidence eventually proves to be legally deficient, a justiciable issue may still be present. UXB Sand Gravel, Inc. v. RosenfeldConcrete Corp., 641 A.2d 75 (R.I. 1994).
This Court denies both requests for attorney's fees. Plaintiff's request is denied since it is not the "prevailing party." Defendant's request is denied because the enforceability of the noncompetition provision is a justiciable issue in that it is "a controversy in which a claim of right is asserted against one contesting it."
For the foregoing reasons, this Court denies Plaintiff's request for a preliminary injunction and denies both parties request for reasonable attorney's fees..
Counsel shall prepare the appropriate order for entry.