**ATHANS et al. v. ROSSI.**

No. 15251.

Court of Civil Appeals of Texas.
Fort Worth.

May 18, 1951.

Rehearing Denied June 15, 1951.

Clyde, Love & Barnes, of Fort Worth, for appellant, Wilbur Blanton.

Ernest May, of Fort Worth, for appellant, James Athans.

M. Hendricks Brown, of Fort Worth, for appellee.

McDONALD, Chief Justice.

On December 9, 1949, Wilbur Blanton and Floreen Blanton entered into a written agreement to sell to Rene G. Rossi and J. H. Paine the stock and fixtures of a small cafe in Fort Worth. The purchase price was $5,000, $1,000 of which was paid at the time the contract was signed, and the remainder of which was to be paid in monthly installments of $150 each. The contract provided that the property in question should be free and clear of all indebtedness.

Blanton had previously purchased the property from James Athans, and still owed Athans $2,700 on the purchase price, payable in monthly installments of $100 each, and secured by a chattel mortgage lien on the property. This fact was unknown to Rossi and Paine when they bought from Blanton, but within about a week Athans talked to Rossi and told him about Athans' lien on the property. What followed will be discussed later in the opinion.

Athans sued Blanton on his note and mortgage, and instituted garnishment proceedings against Rossi on allegations that Rossi was indebted to or had effects in his hands belonging to Blanton. Paine had transferred whatever interest he had in the matter to Rossi, and was not a party to the suit. The suit against Blanton was consolidated with the garnishment proceeding, and under the pleadings upon which the parties went to trial Rossi sought rescission of the purchase from Blanton and a return of the money paid as a down payment on the property. The court, without a jury, rendered judgment (a) that Athans recover judgment against Blanton for $2,400, finding that Athans had theretofore taken possession of the property covered by his mortgage and had sold same; (b) that Blanton take nothing by his suit against Rossi, or on a cross-claim he had filed against Athans; (c) that Rossi recover judgment against Blanton for $1,000; and (d) that Athans take nothing as against Rossi.

Blanton and Athans have appealed, filing a joint brief in this court. The points of error are (1) that the trial court erred in acquitting Rossi of liability to Blanton on the purchase contract of December 9, 1949; (2) that the trial court erred in treating said contract as rescinded, and in awarding Rossi judgment against Blanton for $1,000, and in denying Blanton judgment against Rossi for the balance of the purchase price; (3) that the trial court erred in denying Athans judgment against Rossi as garnishee.

Judgment having been rendered by the trial court in favor of Rossi, the evidence will be considered in the light

most favorable to him, and, there being no findings of fact and conclusions of law, the judgment will be affirmed on any theory having support in the pleadings and the evidence.

Rossi and Paine did not know of the indebtedness to Athans and the lien securing it when they made the contract of December 9th. The contract stipulated that the property was free and clear of indebtedness. Relying on the provisions of Article 5496, R.C.S., Athans demanded payment in full of his note when he heard of the sale to Rossi and Paine, and consistently refused all offers from the interested parties to continue payment on his note on the terms provided for in the note, to-wit, $100 per month. Shortly after Athans heard of the sale and informed Rossi about his lien on the property, Blanton, Athans and Rossi each employed attorneys, and there followed some negotiations looking to a possible statement of the controversies. These efforts to settle were unsuccessful, due, perhaps, to the fact that Athans demanded payment in full of his note, and Blanton and Rossi, between them, could not meet Athans' terms. On January 13, 1950, Rossi's attorney wrote a letter to Athans and Blanton, declaring that the sale had been rescinded, and demanding that the property be removed from the premises. Further conversations took place between various parties and their attorneys, and on January 18th Rossi's attorney wrote another letter to Athans, reciting that Athans, had declared that he would not agree to the sale of the property to Rossi and Paine, and demanding that Athans remove the property covered by his lien. On February 25th Rossi's attorney again wrote a letter to Blanton and Athans, demanding that they remove the property purchased from Blanton.

Rossi took possession of the cafe after the contract of December 9th was signed, operated the cafe for a short time, and in January closed it down for redecorating. The cafe was opened again in March, and was operated for a few weeks, after which it was closed again. Athans finally took possession of the property covered by his lien, or at least a part of it, and sold it under the mortgage prior to the time judgment was taken in the suit. Blanton testified that the sale covered some property other than that covered by Athans' lien, and that he never obtained possession of those items.

Blanton and Athans attack the judgment awarding rescission on two principal grounds, (1) that Rossi waived his right to rescission by retaining and using the property purchased from Blanton, and (2) that in any event he retained some of the benefits of the sale, and at no time offered to do more than return part of the personal property purchased from Blanton. They say in particular that Rossi acquired the good will and going-concern value of the cafe business, and retained such by obtaining a new lease from the landlord. Blanton had transferred to Rossi and Paine his credit for some prepaid rent on the building, and appellants claim that Rossi's acceptance of this benefit cuts him off from claiming a rescission of the contract. In this connection it may be mentioned that on December 9th Blanton executed a purported lease on the building to Rossi and Paine, as if the building were owned by Blanton, although it was in fact owned by two other persons. When Rossi became acquainted with the condition of affairs, he obtained a lease from the true owners on January 9th. Appellants, pointing to the date of this lease, and to the date of the letter written to Blanton and Athans on January 13th, say that Rossi decided to attempt rescission only after he had secured possession of the location by obtaining the lease from the building owners. They cite, among other cases, Dalton Adding Machine Sales Co. v. Wicks, Tex.Civ. App., 283 S.W. 642; Powell v. Rockow, 127 Tex. 209, 92 S.W.2d 437; Rosenbaum v. Texas Building & Mortgage Co., 140 Tex. 325, 167 S.W.2d 506; and J. B. Colt Co. v. Head, Tex.Com.App., 292 S.W. 198, as compelling the holding that Rossi lost his right to claim rescission by retaining the property and using it for some time, and by remaining in possession of the premises by obtaining a new lease from the

building owners, and by accepting credit for the advance payment on the lease which had been made by Blanton.

██ The remedy of rescission may be lost or waived in a number of ways, as by acts or conduct constituting a waiver, ratification or affirmance of the transaction. 7 Tex.Jur., p. 943. Waiver involves an issue as to intention, which is to be discovered by reference to a party's statements and conduct. Id., p. 946. Lapse of time is often a determining factor. Id. "It is a rule of general application that a buyer who desires for one good reason or another to rescind his purchase must act with reasonable promptness after discovering that he is entitled to rescind," else he will be held to have waived the right of rescission. 37 Tex.Jur., p. 530. "It is impossible to lay down any definite rule as to the time for action, since the question as to whether a rescission was claimed with the necessary promptness is usually one of fact." Id., p. 532. See annotation in 77 A.L.R. 1165.

██ Where the seller rejects tender of the property, it becomes the duty of the buyer to handle or dispose of the property in such manner as will protect the interests of both parties, and, he is not necessarily to be charged with waiver of the right to rescission where his retention of the property is consistent with his claim of rescission. 37 Tex.Jur., pp. 537–39. For cases applying this rule, see Alexander v. Walker, Tex.Civ.App., 239 S.W. 309, writ dis.; and Nu-Enamel Paint Co. v. Davis, Tex.Civ.App., 63 S.W.2d 861, writ dis.

██ In the cases cited by appellant, there was involved some defect of quality of the article sold, some failure of the article to serve the purpose for which it was sold, or the like. In the case before us it became apparent soon after the sale that Blanton could not perform his agreement to deliver the property free and clear of indebtedness. When it became known, after some negotiations between all the parties concerned, that Athans would release his lien only on payment of his indebtedness in full, and that neither Blanton nor Rossi was in position to meet this demand, Rossi through his attorney notified Athans and Blanton that he had rescinded the sale, and demanded that they take the property from the premises. Athans, as the party bringing the garnishment proceedings, can occupy no better position against Rossi than Blanton occupies. 20 Tex.Jur., p. 802. It is difficult for us to see how Blanton is in position to demand payment from Rossi of the $4,000 balance on the purchase price. We are not sure that Rossi's defense necessarily has to be based on the right to rescind the purchase. Blanton has not delivered that for which Rossi agreed to pay, to-wit, the property free and clear of indebtedness. Appellants complain that Rossi has not the right to rescind in part an indivisible contract. With equal reason it might be argued that Blanton has no right to recover the purchase price of property which has been delivered only in part, where there has been no effort to plead or prove a case based on partial performance.

Athans claims, for the sake of the garnishment proceeding, that the sale from Blanton to Rossi was completed, but from the beginning Athans has also claimed his right to take possession of the property under Article 5496 and have it sold for payment of his debt, though not yet due as to the remaining installments. The evidence supports a conclusion that it was the assertion by Athans of his rights under Article 5496 that prevented completion of the transaction between Blanton and Rossi, because Blanton appeared to be willing to have the payments coming from Rossi applied on the indebtedness to Athans. Athans was within his legal rights in refusing to consent to the sale to Rossi, but is not in good position to claim that Rossi owes Blanton for something that Blanton was unable, by reason of Athans' rights and his assertion of them, to sell to Rossi.

██ Blanton was not, under the pleadings and proof, entitled to payment from Rossi under the contract. Athans, as garnishor, stands in Blanton's shoes in this respect. The evidence was sufficient to support the judgment of the trial court, and the findings which the judgment necessarily implies.

Judgment affirmed.