Manning v. Merr Lyn P Fen & Sm 






NO. 10-89-128-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          JOHN FREDRICK MANNING,
                                                                                            Appellant
          v.

          MERRILL, LYNCH, PIERCE, FENNER
          & SMITH, INC.,
                                                                                            Appellee

* * * * * * * * * * * * *

 From County Civil Court at Law No. 4
Harris County, Texas
Trial Court # 520,993

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          Manning appeals a judgment taken by Merrill Lynch for the deficit remaining after 300
shares of common stock purchased by Merrill Lynch on Manning's behalf were sold due to
nonpayment. Manning contends that no contractual relationship existed between the parties upon
which any purchase of securities or subsequent debt could have been based. He also argues that
the trial court erred in denying his motion for continuance, his right to counsel, and his right to
a jury trial. We affirm the judgment.
          Manning asserts in points one, two and eight that the court abused its discretion in
overruling his motion for continuance, effectively preventing his retention of counsel prior to trial. 
Merrill Lynch filed its original petition on February 11, 1988, which Manning answered pro se
on September 12. Following a hearing on discovery on December 6, the court set the case for
trial on a non-jury docket on Wednesday, December 21, and noted on the order that the parties
had been notified of the setting in open court. 
          On December 15, Manning filed, pro se, a sworn motion for continuance alleging that
"[m]ovant realizes he is a layman at law and needs the assistance of a lawyer. . . .," identifying
the "attorney of his choice," and stating that the attorney could not be present at the December 21
trial. He gave no reason for the attorney's inability to be present on that date. He further
complained that he had not been allowed the normal discovery process and would need additional
time to obtain the information denied him by the court in its December 6 discovery order. 
Manning also alleged as a basis for the continuance that he could not obtain the testimony or
presence of his witness, Paul Manning, in such a short period before trial. Manning supplied a
California address for Paul Manning and indicated that Manning would testify "about the dealings
he had with plaintiff in movant's behalf." The motion made no mention of any diligence used by
John Manning to obtain the information he sought or to procure Paul Manning's testimony as
required by Rule 252. See Tex. R. Civ. P. 252. The court sua sponte denied the motion for
continuance, citing the lack of diligence, following the trial on the merits on December 21.
          Manning failed to present his motion and obtain a ruling prior to the beginning of the trial
and has therefore waived any error. See Tex. R. App. P. 52(a); Lemons v. EMW Manufacturing
Co., 747 S.W.2d 372, 373 (Tex. 1988); City of Corsicana v. Herod, 768 S.W.2d 805, 815-16
(Tex. App.--Waco 1989, no writ); Greenstein, Logan & Co. v. Burgess, 744 S.W.2d 170, 179
(Tex. App.--Waco 1987, writ denied). Moreover, he has failed to demonstrate that the court
clearly abused its discretion. The court is presumed to have correctly exercised its discretion
when it denies a motion that fails to comply with the rules governing continuances. See Tex. R.
Civ. P. 252, 253; Greenstein, Logan & Co., 744 S.W.2d at 179. Lynd v. Wesley, 705 S.W.2d
759, 764 (Tex. App.--Houston [14th Dist.] 1986, no writ); Gendebien v. Gendebien, 668 S.W.2d
905, 907 (Tex.App.--Houston [14th Dist.] 1984, no writ). Points one, two, and eight are
overruled.
          Manning complains in point three that the court erred when it denied him a jury trial. 
Manning requested a jury trial in the prayer of the counterclaim he filed on September 12. The
parties agreed during oral argument of this appeal that Manning paid the jury fee on December
6, the same day that the court set the case for trial on the non-jury docket. Rule 216 provides that
when a written request for a jury trial is filed and the jury fee is paid a reasonable time before the
date the case is set for trial on the non-jury docket, not less than thirty days in advance, a jury trial
has been properly demanded. See Tex. R. Civ. P. 216 (a),(b). However, we need not decide
whether Manning timely paid the jury fee and properly demanded a jury trial under Rule 216
because he has waived any error. When the case was called for trial, Manning failed to demand
a jury or to object to the court's hearing the case on its merits. He participated in the trial before
the court on December 21 without complaint and asked the court to decide fact questions. Having
received an adverse ruling from the court, he may not now complain that he was entitled to have
a jury rather than the court decide the facts. See Walker v. Walker, 619 S.W.2d 196, 197 (Tex.
Civ. App.--Tyler 1981, writ ref'd n.r.e.). Point three is overruled.
          Manning argues in points four and six that the court erred in entering judgment for Merrill
Lynch because no evidence was introduced of a written or oral contractual or broker/client
relationship between Manning and Merrill Lynch. Manning asserts in point five that, assuming
a contractual relationship existed, the sale of unregistered securities in Texas requires rescission
of the contract of purchase. 
          Frederick G. Cater, a thirty-year managerial and administrative employee of Merrill
Lynch, identified copies of the new accounts form containing information on Manning and the
order ticket to purchase 300 shares of Trimedyne stock showing Manning as the customer. 
Although Cater did not complete these particular forms as he was not a broker, he was familiar
with the official documents and the normal business procedures used by the brokers and by Merrill
Lynch. He stated that most of Merrill Lynch's business was done over the telephone and that
although the company likes to get a "good faith deposit" to secure the transaction, in some cases
no deposit was requested. Cater explained that the word "unsolicited" on the order ticket signified
that the purchase was the customer's idea--that the broker did not recommend the purchase of that
security. He identified copies of the March and April statements of account reflecting the name
of John Frederick Manning as well as copies of letters dated April 9, April 28, and June 10, 1987,
sent to Manning regarding the debit balance of his account and requesting payment. All of these
documents were admitted into evidence as business records. 
          The purchase price of the Trimedyne stock totaled $5,817.13. The shares were later sold
because of nonpayment for $4,804.37, leaving a debit balance of $1, 012.76. The three letters
notifying Manning of the debit balance and requesting payment were sent to Manning at the same
post office box address reflected on some of the pleadings sent by Manning to counsel for Merrill
Lynch. None of the letters were returned to Merrill Lynch. The court had also addressed a letter
to Manning at that post office box. 
          Benjamin Burgeson, the former Merrill Lynch broker who initially contacted Manning on
a "cold call" and had opened the "cash account" for Manning in 1986, related seven or eight
lengthy telephone conversations with Manning and felt that he was a "good prospect." They had
discussed several stocks, some of Merrill Lynch's recommendations, and some of Mr. Manning's
own ideas. Manning told Burgeson of approximately a quarter of a million dollars overseas with
which Burgeson might have the opportunity to work. They discussed Trimedyne during the
conversations and Burgeson told Manning that that particular stock was not a Merrill Lynch
recommendation. Burgeson checked the financial history of Trimedyne and Standard and Poor's
guide to give Manning an idea of its activity in the marketplace. Burgeson had never sold
Trimedyne to any other customer and had not been familiar with it prior to his research for
Manning. They discussed opening an account, and Manning gave Burgeson a "flat order" of three
hundred shares--"buy me three hundred shares." 
          Burgeson explained that he went over the new account form with Manning, getting the
necessary personal information from him such as social security number, to complete each
question. Burgeson stated that the new account form was his "link to credibility" with the client,
and that if he could "successfully get through the form and answer the questions completely, then
[he] had confidence in doing the business." Burgeson unequivocally identified Manning as the
person with whom he had spoken on the telephone and who had provided him the information
needed to complete the new account form and open the account. Burgeson did not doubt that
Manning wanted the stock and did in fact place the order. 
          Burgeson had immediately placed the order and had had no further conversations with
Manning, though he tried unsuccessfully to contact Manning three or four times during the week
the stock was to be sold due to nonpayment. He spoke at least three times with a woman who
identified herself as Manning's wife in an attempt to get a message to Manning that the stock
would be sold unless his payment was received. Burgeson believed that Manning understood what
he was doing in opening up the account. Burgeson even requested and received an extension
before the stock was sold, still believing that Manning intended to pay. Having considered only
the evidence in support of the judgment and viewing it in its most favorable light, we find the
evidence legally sufficient to establish an agreement by Manning to purchase the stock and to
support the court's judgment. See Glover v. Texas Indemnity Co., 619 S.W.2d 400, 401 (Tex.
1981). Points four and six are overruled.
          Manning introduced into evidence a photocopy of an "absence of publication" affidavit
from the Securities Commissioner of the State of Texas which showed that Trimedyne, Inc. had
never registered any securities or that no permit had been granted for the sale of such securities
in Texas. Although Manning claims on appeal that the sale of unregistered securities requires
rescission of the transaction, he did not plead or prove his entitlement to rescission in the trial
court. See Citizens Standard Life Ins. Co. v. Muncy, 518 S.W.2d 391, 394 (Tex. Civ. App.--Amarillo 1974, no writ). Moreover, Manning has waived any right he might have had to
rescission by his unreasonable delay in seeking that remedy. See Athans v. Rossi, 240 S.W.2d
492, 495 (Tex. Civ. App.--Fort Worth 1951, writ ref'd n.r.e.). Point five is overruled. 
          In point seven, Manning points to "inconsistencies" between the contents of Exhibit 1
introduced by Merrill Lynch and its answers to interrogatories, which were never introduced into
evidence. Manning has failed to state an identifiable complaint or show how the court erred. 
Thus, he has presented nothing for review. Point seven is overruled.
          The judgment is affirmed.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed May 16, 1991
Do not publish 


Tex. R. Civ. P. 166a(i). HCEC denies that it moved for a no-evidence motion for summary
judgment. 
      As indicated by our analysis above, we believe this was a standard motion for summary
judgment, not a “no-evidence” motion under Rule 166a(i). HCEC presented summary-judgment
evidence which shows it was entitled to judgment as a matter of law. 
      The no-evidence summary judgment is a relatively new creature which is working its way
through the appellate courts. In several recent cases, we have seen confusion when a party argues
on appeal that a motion was a “no-evidence” motion for summary judgment when the motion was
clearly a motion under the long-standing rule allowing motions for summary judgment. In the
future, a party moving for a “no-evidence” summary judgment under the new rule should
explicitly state that it is a “no-evidence” motion under Rule 166a(i). Id. Such a motion should
be made without presenting summary judgment evidence. See id. 
CONCLUSION
      Having overruled the issue, we affirm the judgment.
 

                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed June 23, 1999
Publish